In re Harold R. SCHMITZ,
et al., Relators.

No. 07–0581.

Supreme Court of Texas.

Argued April 2, 2008.

Decided May 22, 2009.

George W. Bramblett Jr., Paul Nicholas Even, Debra Janece McComas, Heather Bailey New, Haynes & Boone, LLP, Dallas TX, Lamont Jefferson, Haynes and Boone, LLP, San Antonio TX, for Relator.

Joe Kendall, Hamilton Philip Lindley, Kendall Law Group, Dallas, TX (Darren J. Robbins, Randall J. Baron, Amber L. Eck, David T. Wissbroecker, Kevin K. Green, Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, San Diego, CA, Robert Weiser, The Weiser Law Firm, P.C., Wayne, PA, persons interested in case for Real Party), for Real Party in Interest.

Justice BRISTER delivered the opinion of the Court.

Texas law has recognized shareholder derivative suits for more than a century.[1] As such suits are nominally brought on a corporation's behalf, we have long required that a shareholder first demand that the corporation bring the suit itself, unless such a demand would be futile.[2] But it does not appear we have ever specified what such a demand must include.

In 1997, the Legislature amended the Texas Business Corporation Act to require such demands in all cases (even if it is futile), and that the demand be made "with particularity." The question here is whether a two-sentence demand was inadequate because it failed to state a shareholder's name or state the claim with particularity. The courts below held it was not; we disagree, and thus grant mandamus relief.

## I. Background

Lancer Corporation, a Texas corporation headquartered in San Antonio, manufactured beverage dispensers. In October 2005, Lancer agreed to a buyout by Hoshizaki America, Inc., with Lancer's shareholders to receive $22 per share. Two months later (and about a month before the merger was to close), a law firm faxed a letter to Lancer's board insisting that the merger be cancelled within 24 hours "in light of a superior offer" of $23 per share. Three days later, the same firm filed this derivative suit on behalf of shareholder Virginie Dillingham seeking an in-

---

1. See, e.g., Becker v. Dirs. of Gulf City St. Ry. & Real Estate Co., 80 Tex. 475, 15 S.W. 1094 (1891); Evans v. Brandon, 53 Tex. 56 (1880).

2. See Becker, 15 S.W. at 1097; Evans, 53 Tex. at 60.

junction to halt the merger and declaratory relief against the board members.

Lancer's shareholders overwhelmingly approved the merger in January 2006, and on February 2nd Lancer merged into Hoshizaki and ceased to exist. Dillingham never sought a hearing on her injunction request, and after the merger amended her petition to seek rescission of the merger, damages on behalf of Lancer, and attorneys' fees.

The Defendants—all eight former directors of Lancer—filed a motion to dismiss this suit for failure to send a proper presuit demand. After the trial court and court of appeals denied relief,[3] the Defendants sought mandamus relief in this Court.

## II. Is Abatement Required?

■ As an initial matter, we must decide whether this case should be abated for reconsideration by a successor judge. The motion to dismiss here concerns a suit filed in the 288th District Court in Bexar County. After oral arguments in this Court, Judge Sol Casseb III replaced Judge Lori Massey as judge of that court. Normally, this would require abatement for reconsideration, as "[m]andamus will not issue against a new judge for what a former one did."[4]

But Judge Massey never heard the relators' motion. Under Bexar County's central docket system, pretrial motions are generally heard by a presiding judge—one of the county's 13 civil district judges who rotate monthly in that position.[5] The motion here was actually heard and denied by Judge Gloria Saldaña, who remains in office. The question is whether to abate this case for reconsideration when the judge who ceased to hold office never ruled on the motion, and the judge who did rule on it is still in office.

■ We hold that abatement is not required in these circumstances. The proper respondent in a mandamus action is "the person against whom relief is sought."[6] For judicial orders, that should generally be the judge who made the ruling. For example, in *Remington Arms Co., Inc. v. Caldwell*, we held the proper respondent in a challenge to a discovery sanction was the assigned judge who issued it rather than the presiding judge of the court in which the case was filed.[7]

But the courts of appeals have split on this issue. Some have held that the respondent in a mandamus proceeding should be the presiding judge rather than the judge who signed the challenged order.[8] Others have held the opposite—that the respondent should be the judge who signed the order rather than the presiding judge.[9] One has simply addressed the writ to both.[10]

---

3. 285 S.W.3d 491, 2007 WL 1987721.

4. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 228 (Tex.2008); *see* Tex.R.App. P. 7.2(b).

5. Bexar County Civ. Dist. Ct. Loc. R. 2, 3(A).

6. Tex.R.App. P. 52.2.

7. 850 S.W.2d 167, 168 n. 1 (Tex.1993).

8. *See, e.g., In re Balawajder*, No 01–03–0002–CV, 2003 WL 21470397, at *1 (Tex.App.-Houston [1st Dist.] June 19, 2003, orig. proceeding) (mem.op.); *In re Dilley Indep. Sch. Dist.*, 23 S.W.3d 189, 190 n. 1 (Tex.App.-San Antonio 2000, orig. proceeding); *In re Acevedo*, 956 S.W.2d 770, 772 (Tex.App.-San Antonio 1997, orig. proceeding); *Humana Hosp. Corp. v. Casseb*, 809 S.W.2d 543, 548 (Tex. App.-San Antonio 1991, orig. proceeding); *Hoggard v. Snodgrass*, 770 S.W.2d 577, 588 (Tex.App.-Dallas 1989, orig. proceeding).

9. *See In re McDaniel*, No. 10–04–00166–CV, 2006 WL 408397, at *1 (Tex.App.-Waco Feb.22, 2006, orig. proceeding); *In re Alsenz*, 152 S.W.3d 617, 623 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding).

The only reason stated in any of these cases for naming a judge other than the one who signed the order is that the presiding judge alone has authority to sit in the case in the future.[11] But it is never entirely predictable who will preside over a case when it returns to a trial court, as Texas law allows judges to sit for one another whenever they choose.[12] This is especially true in counties with a central docket like Bexar County, as the presiding judge hearing pretrial matters changes monthly.

■ Generally, of course, the respondent is not critical in mandamus proceedings, as only the real party in interest actually appears, argues, and is affected by the outcome. Indeed, on at least two occasions we have changed the respondent on our own motion in a final opinion conditionally granting the writ.[13] Of course, the writ must be directed to someone, but in the final analysis *any* judge sitting in the case after mandamus relief is granted would be compelled to obey it.[14] Accordingly, we adhere to the more practical rule treating the judge who signed the order as the respondent. As the judge who signed the order here has not left office, the abatement rule does not apply.

## III. The Demand Requirement In Texas Derivative Actions

The contours of the demand requirement in Texas law have always been somewhat unclear, in part because shareholder derivative suits have been relatively rare.[15] The original 1941 rules of civil procedure imposed a demand requirement in derivative suits, but that provision was repealed four months after it became effective.[16] It reappeared in 1973 in article 5.14 of the Texas Business Corporation Act, which required that an initial pleading state "[w]ith particularity, the efforts of the plaintiff to have suit brought for the corporation by the board of directors, or the reasons for

10. *See Dal–Briar Corp. v. Baskette,* 833 S.W.2d 612, 614 n. 1 (Tex.App.-El Paso 1992, orig. proceeding).

11. *See Hoggard,* 770 S.W.2d at 588.

12. *See* Tex. Const. Art. V, § 11; Tex R. Civ P. 330(e); *see, e.g., In re Houston Lighting & Power Co.,* 976 S.W.2d 671, 673 (Tex.1998).

13. *See Rios v. Calhoon,* 889 S.W.2d 257, 258 n. 1 (Tex.1994) (noting that court on its own motion changed respondent from appellate court to trial judge); *Loftin v. Martin,* 776 S.W.2d 145, 145–46 n. 1 (Tex.1989) (same).

14. *See Loram Maint. of Way, Inc. v. Ianni,* 210 S.W.3d 593, 596 (Tex.2006) (describing law-of-the-case doctrine as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages"); *In re K.M.S.,* 91 S.W.3d 331, 331 (Tex.2002) (noting that lower courts cannot "decline to follow" rulings of higher court).

15. *See* Robert K. Wise, *Demand Futility in Shareholder–Derivative Litigation Under Texas Law,* 28 Tex. Tech. L.Rev. 59, 60 (1997) ("Surprisingly, there are very few cases, treatises, or articles that discuss demand futility under Texas law, and none provide more than a cursory analysis of it."); M. Marvin Katz, *Shareholder's Derivative Suits in Texas: Possible Restrictions On Their Abuse,* 36 Tex L.Rev. 641, 641 n.2 (1958) (noting a "scarcity of reported Texas cases").

16. Tex.R. Civ P. 42(b) (1941, amended 1941) ("The complaint shall set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."). A similar provision reappeared in Rule 42 in 1984, only to be discarded again in 2003 as "redundant of Article 5.14." Tex R. Civ P. 42 (1984, amended 2003); *see* Tex.R. Civ. P. 42 cmt. (2003).

not making any such efforts." [17]

In 1997, the Legislature extensively revised the Texas Business Corporation Act "to provide Texas with modern and flexible business laws which should make Texas a more attractive jurisdiction in which to incorporate." [18] Included were changes to article 5.14 to conform Texas derivative actions to the Model Business Corporation Act. Article 5.14(C) now provides that "[n]o shareholder may commence a derivative proceeding until . . . a written demand is filed with the corporation setting forth with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action." Unlike Texas law for a century before, the new provision requires presuit demand in all cases; a shareholder can no longer avoid a demand by proving it would have been futile.[19]

## IV. Was This Demand Adequate?

 The demand letter at issue here was directed to Lancer's board, and stated in its entirety as follows:

> We write to insist that you confirm to us, in writing, no later than noon on Wednesday, December 21, 2005, that, in light of a superior offer having been received for the Lancer Corporation ("Lancer" or the "Company") at $23 per share, you are taking no further steps to consummate or in any way facilitate the previously announced sale to Hoshizaki America, Inc. ("Hoshizaki") at $22 per

share. Your fiduciary obligations require that you fully and fairly consider all potential offers and that you disclose to shareholders all of your analysis that leads to your recommendation regarding the pending sale to Hoshizaki or any other offers made.

The Defendants assert the demand was insufficient because it failed to (1) state the name of a shareholder, or (2) describe the subject of the claim with particularity. We address each in turn.

### A. Must a Demand Identify a Shareholder?

 Article 5.14 does not expressly state that a presuit demand must list the name of a shareholder. But because parts of the article and most of its purposes would be defeated otherwise, we hold that a demand cannot be made anonymously.

The statute here provides that "[n]o shareholder may commence a derivative proceeding until . . . a written demand is filed." [20] It expressly limits standing to shareholders who owned stock "at the time of the act or omission complained of." [21] It requires that the demand state the "the subject of the claim or challenge" that forms the basis of the suit.[22] And it tolls limitations for 90 days after a written demand is filed.[23] Given the interrelation between the demand and the subsequent suit, it is hard to see how or why the demand could be made by anyone other than the shareholder who will file the suit.

17. Acts of 1973, 63rd Leg., R.S., ch. 545, § 37, 1973 Tex. Gen. Laws 1486, 1508.

18. House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 1104, 75th Leg., R.S. (1997).

19. *Pace v. Jordan*, 999 S.W.2d 615, 621 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) ("Under the amended article [5.14], demand futility is no longer an option.").

20. Tex. Bus. Corp. Act art. 5.14, § C.

21. *Id.* art. 5.14, § B.

22. *Id.* art. 5.14, § C(1).

23. *Id.* art. 5.14, § E.

Of course, requiring the demand to come from the putative plaintiff is not the same as requiring that it state the plaintiff's name. But for several reasons we believe it must.

First, article 5.14 presumes that a corporation knows the identity of the shareholder making the demand. The article prohibits filing suit until 90 days after the demand "unless the shareholder has earlier been notified that the demand has been rejected."[24] The tolling provision suspends limitations for the shorter of 90 days or "30 days after the corporation advises the shareholder that the demand has been rejected."[25] For a corporation to "notify" or "advise" the shareholder of rejection, it must know who the shareholder is.

Second, the identity of the shareholder may play an important role in how the corporation responds to a demand. "The identity of the complaining shareholder may shed light on the veracity or significance of the facts alleged in the demand letter, and the Board might properly take a different course of action depending on the shareholder's identity."[26] In other words, a demand from Warren Buffett may have different implications than one from Jimmy Buffett.

Third, a corporation cannot be expected to incur the time and expense involved in fully investigating a demand without verifying that it comes from a valid source. Article 5.14 sets out a procedure for independent and disinterested directors to conduct an investigation and decide whether the derivative claim is in the best interests of the corporation.[27] If they determine in good faith that it is not, the court must dismiss the suit over the plaintiff's objection.[28] It would be hard to imagine requiring these procedures, especially in cases like this one involving an imminent corporation merger, at the instance of someone who could in no event file suit.

Finally, we are concerned with the potential for abuse if demands can be sent without identifying any shareholder. The letter here was on the letterhead of a California law firm whose principal prosecuted hundreds of stockholder derivative actions,[29] and later pleaded guilty to paying kickbacks to shareholders recruited for that purpose.[30] His actions have been described by one federal court as the cause of much of the criticism about derivative suits:

> A direct target of Congress, singled out for much of the criticism of lawyers who manipulate the securities laws to serve their own interest, was Milberg Weiss Bershad Hynes & Lerach ("Milberg"), whose name partner, William Lerach, known as the "King of Strike Suits," had boasted, "I have the greatest practice in the world because I have no clients. I bring the case. I hire the plaintiff. I do not have some client telling me what

---

**24.** *Id.* art. 5.14, § C(2).

**25.** *Id.* art. 5.14, § E.

**26.** *Potter v. Hughes,* 546 F.3d 1051, 1057–58 (9th Cir.2008).

**27.** Tex. Bus. Corp. Act art. 5.14, § F.

**28.** *Id.*

**29.** *In re Dynegy, Inc. Secs. Litig.,* 226 F.R.D. 263, 280 (S.D.Tex.2005) (quoting resume of

William Lerach of Lerach Coughlin Stoia Geller Rudman & Robbins L.L.P. that "he has prosecuted hundreds of securities class and stockholder derivative actions that have yielded billions of dollars in recoveries").

**30.** *See* James P. McDonald, *Milberg's Monopoly: Restoring Honesty and Competition to the Plaintiffs' Bar,* 58 Duke L.J. 507, 524, 531 (2008).

to do. I decide what to do." [31]

There are no such allegations in this case, but it would be unwise to wait for them to occur before taking the possibility into account.

We agree with Dillingham that by writing article 5.14's demand requirement in the passive tense (barring suit until "a written demand *is filed*"), the Legislature did not require that shareholders send the demand personally, as opposed to having someone do so on their behalf. But requiring the demand to state a shareholder's name costs nothing; typing a name into the demand is not expensive and can cause no delay, assuming a shareholder exists who is entitled to make the claim. Construing article 5.14 as a whole, we hold that the demand required by the article must name the shareholder on whose behalf it is made.[32] Because the demand here did not do so, and did not even purport to be made on behalf of any shareholder, it was inadequate.

### B. Was This Demand Stated "With Particularity"?

Article 5.14 is based largely on the Model Business Corporation Act, whose eight sections all appear among the 12 sections of article 5.14. But one of the notable differences between the two is that the Model Act requires only that a presuit demand be in writing, while article 5.14 requires a written demand "setting forth with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action." Given this deliberate insertion, the demand letter here cannot be what the Legislature had in mind.

The only complaint and demand for action listed in this letter was that the Board stop the Hoshizaki merger "in light of a superior offer . . . at $23 per share." The demand gives no reason why the Hoshikazi offer was inferior other than what one can imply from the $1 difference in price. All other things being equal, shareholders should of course prefer $1 more rather than $1 less. But in comparing competing offers for a merger, all other things are rarely equal.

A large number of variables may affect the inherent value of competing offers for corporate stock. A cash offer may prove more or less valuable than an offer of stock currently valued at the same amount. Competing bidders may be more or less capable of funding the offers they tender, or completing the transaction without antitrust or other obstacles. Competitors may attach conditions that make an offer more or less attractive in the short or long run.

In a merger like this involving several hundred million dollars, one cannot say whether the $23 offer was superior to the $22 offer without knowing a lot more. A rule requiring that a corporation always accept nominally higher offers, in addition to sometimes harming shareholders, would replace the business judgment that Texas law requires a board of directors to exercise.[33] As a result, a board cannot analyze a shareholder's complaint about a higher competing offer without knowing the basis of that complaint. As this demand said

---

**31.** *In re Network Assocs., Secs. Litig.,* 76 F.Supp.2d 1017, 1032 (N.D.Cal.1999).

**32.** *Accord, Potter v. Hughes,* 546 F.3d 1051, 1058 (9th Cir.2008); *Smachlo v. Birkelo,* 576 F.Supp. 1439, 1444 (D.Del.1983).

**33.** Tex. Bus. Corp. Act art. 2.31; *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846, 849 (1889); *Pace v. Jordan,* 999 S.W.2d 615, 623 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

nothing about that, it was not stated "with particularity" as required by article 5.14.[34]

The second sentence of the demand here added that the Board should "fully and fairly consider all potential offers" and "disclose to shareholders all of your analysis" for recommending the Hosizaki sale. This bland statement of a corporate board's duties could be sent to any board at any time on any issue. The demand did not suggest how the board had failed to consider other offers, or what information it might be withholding. Thus, it gives no direction about what Lancer's board should have done here.

On appeal, Dillingham alleges further details of the Hoshizaki merger that she says show Lancer's board chose this merger because of the benefits it gave them personally rather than the corporation. We agree a derivative suit can serve as one important means of preventing a corporate board from enriching themselves at the shareholders' expense. But the demand letter here said nothing about any of that.

We do not attempt today to explore all the ways in which a demand might or might not meet article 5.14's "with particularity" requirement. Whether a demand is specific enough will depend on the circumstances of the corporation, the board, and the transaction involved in the complaint. But given the size of this corporation and the nature of this transaction, this demand was clearly inadequate.

## V. Is Mandamus Available?

If a trial court fails to enforce the demand requirements of article 5.14, there is no interlocutory appeal.[35] But that of course does not preclude mandamus review.[36] Mandamus may be available upon a showing that (1) a trial court clearly abused its discretion by failing to correctly apply the law, and (2) the benefits and detriments of mandamus render appeal inadequate.[37] Dillingham concedes that if her demand was inadequate, dismissal was the appropriate remedy.[38] Thus, the only remaining question is whether an appeal could adequately address the error.

In balancing the benefits and detriments of delaying or interrupting a particular proceeding, we must consider the purposes the Legislature was trying to accomplish.[39]

---

**34.** We also note that the letter does not specify why accepting $22 rather than $23 per share would harm the corporation as opposed to the shareholders. *See Eye Site, Inc. v. Blackburn*, 796 S.W.2d 160, 161 (Tex.1990) (noting that only corporation rather than shareholder personally is entitled to recover in derivative suits); *see also Marron ex rel. Stewart & Stevenson Servs., Inc. v. Ream*, No. CIVAH–06–1394, 2006 WL 2734267, at *7 (S.D.Tex. May 5, 2006) (questioning whether claim that board should have accepted offer for $35.50 rather than offer for $35.00 per share was derivative claim belonging to corporation).

**35.** *See Stary v. DeBord*, 967 S.W.2d 352, 354 (Tex.1998) (holding shareholder derivative suit did not fall within statute providing for interlocutory appeal or class certification orders).

**36.** *In re Gulf Exploration,* —— S.W.3d ——, ——, 2009 WL 1028049 (Tex.2009).

**37.** *In re Poly–America, L.P.*, 262 S.W.3d 337, 347 (Tex.2008); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004).

**38.** *Cf. Hines v. Hash*, 843 S.W.2d 464, 469 (Tex.1992) (holding that with respect to DTPA presuit notice requirement, "abatement of the action for the statutory notice period is more consistent with the purpose of notice than dismissal").

**39.** *In re Gulf Exploration,* —— S.W.3d at —— ("'[O]ur place in a government of separated powers requires us to consider also the priorities of the other branches of Texas government.'"); *In re McAllen Med. Ctr.*, 275 S.W.3d 458, 461 (Tex.2008).

Article 5.14 was adopted to preserve the principle that a corporation should be run by its board of directors, not a disgruntled shareholder or the courts.[40] In some cases, this goal will not be defeated merely because a trial court proceeds with a shareholder derivative suit despite an inadequate demand.

For example, if one shareholder is entitled to proceed with a derivative action based on a proper demand, a board gains little by mandamus review of an improper demand by someone else. The parties in a closely-held corporation may have various claims between them that require litigation, regardless of whether a derivative claim is added to the mix.[41] And a corporation's interests may be adequately protected by article 5.14's provision for recovery of expenses if a shareholder suit is prosecuted "without reasonable cause or for an improper purpose."[42]

But this case involves a multi-million dollar merger proceeding on an expedited schedule. As the merger has now been completed, Lancer Corporation no longer exists. It is thus too late for its board to entertain a new analysis of the competing merger offers, or authorize an inquiry by independent and disinterested directors. Assuming as we must that the board would have given proper consideration to this matter had it received a proper demand, that possibility is now foreclosed because the demand fell so woefully short.

"The most frequent use we have made of mandamus relief involves cases in which the very act of proceeding to trial—re-gardless of the outcome—would defeat the substantive right involved."[43] Allowing this case to proceed to trial would effectively allow a shareholder to sue for damages connected with a merger without giving the corporation's board an opportunity to make such a decision for itself. As that would defeat the substantive right the Legislature sought to protect, we hold mandamus relief is warranted.

Accordingly, we conditionally grant the writ of mandamus and order the respondent to vacate its order and enter a new order dismissing the plaintiff's suit. We are confident the trial court will comply, and our writ will issue only if it does not.

Chief Justice JEFFERSON did not participate in the decision.

---

**40.** See, e.g., Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (noting that "the demand requirement implements the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders").

**41.** See, e.g., Willis v. Donnelly, 199 S.W.3d 262 (Tex.2006).

**42.** Tex. Bus. Corp. Act art. 5.14, § J.

**43.** In re McAllen Med. Ctr., 275 S.W.3d at 465.