Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-08-00022-CV

Adam E. **SALAZAR**,
Appellant

v.

Pauline Garcia **DICKEY**, Frank Eugene Dickey, Elizabeth Rodriguez Coronado,
Roberto D. Ross, M.D., and SCI Texas Funeral Services, Inc.,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-02712
Honorable Peter Sakai, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Catherine Stone, Chief Justice
             Karen Angelini, Justice
             Marialyn Barnard, Justice

Delivered and Filed: January 27, 2010

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

    Adam E. Salazar appeals from the trial court's grant of summary judgment. We affirm in part

and reverse and remand in part.

## BACKGROUND

    Salazar, representing himself, sued his stepsister, Pauline Dickey, her spouse, Frank Dickey,

her daughter, Elizabeth Rodriguez Coronado, and her employer, SCI Texas Funeral Services, Inc.

("SCI"), alleging that they failed to inform him of the death of his father, Juan Salazar, in an effort to hide assets, destroy documents, and avoid an autopsy. Salazar also sued Dr. Roberto D. Ross, the physician who signed Juan Salazar's death certificate, alleging that Dr. Ross had a duty to order an autopsy.

Salazar's father, Juan, suffered from diabetes, hypertension, Parkinson's disease, and dementia. Juan Salazar died on January 17, 2005. That day, Adam Salazar was informed by his stepsister, Pauline Dickey, that his father had died. On January 18, 2005, Salazar contacted the funeral home and alleges that he was told his father's body had already been embalmed. Salazar claims that he was not timely informed of his father's death due to an effort on the funeral home's part to prevent an autopsy and hide his father's property.

Four months after Salazar filed his lawsuit, Dr. Ross moved for summary judgment, arguing that Salazar's claims against him were barred by the two-year statute of limitations for health care liability claims as provided in section 74.251 of the Texas Civil Practice and Remedies Code, and by Salazar's failure to provide notice of his claims as required by section 74.051. Salazar filed a written response, arguing that his claims were not health care liability claims governed by chapter 74. The trial court disagreed with Salazar and granted Dr. Ross's motion for summary judgment.

Six months after Salazar filed his lawsuit, SCI filed a traditional and no-evidence motion for summary judgment. The remaining defendants, Pauline Dickey, Frank Dickey, and Elizabeth Rodriguez Coronado joined SCI's motion for summary judgment. The trial court granted the motion.

Salazar now appeals.

## SCI's Motion for Summary Judgment

SCI moved for a traditional and no-evidence summary judgment with respect to five causes of action arguably raised by Salazar's thirty-eight page petition: breach of fiduciary duty, civil conspiracy, negligence per se, unspecified claims under the Constitution, and a securities-based class action. In its motion, SCI argued that (1) Salazar, after being ordered to replead, failed to state claims for breach of fiduciary duty, civil conspiracy, negligence per se, and any constitutional claims;[1] (2) the respective statutes of limitations barred his claims for conspiracy and negligence per se; (3) no evidence supported his claims for breach of fiduciary duty, civil conspiracy, negligence per se, or a securities-based class action. SCI's motion was joined by Pauline Dickey, Frank Dickey, and Elizabeth Rodriguez Coronado.

Salazar filed a written response to the motion, stating that although he was not pursuing a class action or a negligence per se claim, SCI had properly characterized his claims. Salazar did not attach any supporting evidence; nor did his response address SCI's arguments in any meaningful way.[2] Salazar did not seek a continuance. On appeal, he appears to complain that (1) SCI's no-evidence motion for summary judgment should not have been granted because discovery had not been completed; (2) the trial court should have specified the grounds on which it was granting summary judgment; (3) the trial court's summary judgment is a void judgment; and (4) "it is not enough to move for summary judgment without supporting the motion in any way."

---

[1] This motion was brought after SCI had filed special exceptions and the trial court had ordered Salazar to replead.

[2] At the end of his response, Salazar attaches an "affidavit" in which he affirms that "[a]ll the matters referred to and contained within this Affidavit are within my personal knowledge and are true and correct." However, there are no further statements contained in this affidavit. It appears as though Salazar may have been attempting to make his entire response into an affidavit.

First, with respect to his argument that SCI's no-evidence motion for summary judgment should not have been granted because discovery had not yet been completed, Salazar did not preserve this complaint by requesting a continuance in his response to the summary judgment motion. *See Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 524 (Tex. App.—San Antonio 2003, no pet.) (explaining that to preserve complaint that a no-evidence summary judgment was premature, a party must file an affidavit explaining the need for further discovery or a verified motion for continuance).

Second, Salazar argues that the trial court should have specified the grounds upon which it was granting summary judgment. However, when granting summary judgment, a trial court need not specify grounds. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) (explaining that when the trial court does not state the specific grounds on which it granted summary judgment, we must affirm if any of the theories advanced are meritorious).

Third, Salazar complains of different judges presiding over the same case, arguing that their actions were void. Bexar County uses a central docket, rotating, presiding court system. *See* LOCAL RULES FOR CIVIL DISTRICT COURTS OF BEXAR COUNTY. Thus, while Salazar's original petition was assigned to the 408th Judicial District Court when it was filed, rulings were made by the 131st Judicial District Court. Later, the case was designated as complex and assigned to the 225th Judicial District Court, which signed the summary judgments. That different courts ruled on different parts of the case does not make their actions void. The Texas Constitution allows a central docket system like the one in Bexar County. TEX. CONST. art V, § 11 (authorizing district judges to "exchange districts, or hold court for each other"); *see In re Schmitz*, 285 S.W.3d 451, 454 (Tex. 2009) (explaining that "Texas law allows judges to sit for one another whenever they choose"); TEX. R. CIV. P. 330(e) ("Where in such county there are two or more district courts having civil jurisdiction,

the judges of such courts may, in their discretion, exchange benches or districts from time to time, and . . . any of them may in his own courtroom try and determine any case or proceeding pending in another court without having the case transferred, or may sit in any other of said courts and there hear and determine any case there pending . . . ."). Thus, the trial court's judgment is not void.

Fourth, Salazar argues that "it is not enough to move for summary judgment without supporting the motion in any way." Texas Rule of Civil Procedure 166a(i), however, allows a party to move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the respondent would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). The burden then shifts to the respondent to produce evidence raising a genuine issue of material fact. *See id.* Here, SCI filed a no-evidence motion for summary judgment, which was then joined by the remaining defendants, challenging each element of conspiracy and breach of fiduciary duty. Salazar did not produce evidence raising a genuine issue of material fact on the elements of the claims and defenses attacked. After the motion was granted, in his motion for new trial, Salazar attached funeral records and other discovery responses. However, summary judgment evidence may be filed late only with leave of court, which Salazar did not seek or receive. *See* TEX. R. CIV. P. 166a(c); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996).

Salazar also argues that the evidence that SCI, itself, attached to its motion constitutes more than a scintilla of evidence supporting his claims. Specifically, Salazar claims Juan Salazar's death certificate contains false and misleading information, which is evidence of the alleged conspiracy. However, there is no evidence that the death certificate contains false information. Salazar also argues that statements of SCI's employees "clearly indicate and show that the conspiracy to conceal and mislead are evident in this cause." Salazar does not, however, point to which statements of SCI's

employees are evidence of a conspiracy. Salazar also emphasizes that although SCI stated that no fiduciary duty was owed to him because there was "no contact, let alone a relationship, between SCI and Salazar," Rosie Perez's affidavit and Pauline Dickey's discovery responses contradict this statement. However, neither Perez's affidavit nor Dickey's discovery responses show a fiduciary relationship between SCI and Salazar. Salazar also argues that when he told the funeral home that he and his sister Eva were Juan Salazar's only naturally born children, SCI had "an immediate responsibility" "to investigate the situation and allegations." Salazar cites no support for this argument that SCI had a fiduciary duty to investigate once told that Salazar was Juan Salazar's son.

We affirm the summary judgment granted in favor of SCI, Pauline Dickey, Frank Dickey, and Elizabeth Rodriguez Coronado.

### DR. ROSS'S MOTION FOR SUMMARY JUDGMENT

Salazar argues that summary judgment should not have been granted in favor of Dr. Ross because his claims were not health care liability claims governed by the requirements set forth in chapter 74 of the Texas Civil Practice and Remedies Code. We agree.

In determining whether a claim is a health care liability claim governed by chapter 74, we focus on the essence of the plaintiff's claim and consider the alleged wrongful conduct and the duties allegedly breached. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). "It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements" of the Medical Liability Insurance Improvement Act, as codified in chapter 74. *Id.*

In his petition, Salazar alleges that (1) Dr. Ross should have ordered an autopsy to be performed before signing his father's death certificate; and (2) because Dr. Ross was not present

when his father died and did not perform an autopsy, Dr. Ross fraudulently signed a death certificate indicating that Salazar's father had died of natural causes. Thus, Salazar alleges that Dr. Ross entered into a conspiracy with his stepsister, Pauline Dickey, to expedite the embalming of his father and prevent an autopsy from being performed.

Chapter 74 defines a health care liability claim as

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or *health care*, or safety or professional or administrative services *directly related to health care*, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005) (emphasis added). "Health care" means "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider *for, to, or on behalf of a patient* during the *patient's medical care*, treatment, or confinement." *Id.* § 74.001(a)(10) (emphasis added). "Medical care" means "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state *for, to, or on behalf of a patient* during the *patient's care, treatment, or confinement*." *Id.* § 74.001(a)(19) (emphasis added).

In *Hare v. Graham*, No. 02-07-00118-CV, 2007 WL 3037708, at *3 (Tex. App.—Fort Worth 2007, pet. denied), the Fort Worth Court of Appeals addressed the similar issue of whether the alleged failure to obtain consent for an autopsy constituted a health care liability claim. After considering the above definitions, the court noted that the definition of "health care liability claim" is dependent on the definition of "health care," which is in turn dependent on the definition of "medical care." *Id.* The court of appeals explained that the "health care" definition "ends with the

phrase 'the patient's medical care, treatment, or confinement,'" and the "medical care" definition also "ends with the phrase 'the patient's medical care, treatment, or confinement.'" *Id.* The court then noted that "patient" is defined in Chapter 313 of the Texas Health and Safety Code as a person who is admitted to a hospital or residing in a nursing home. *Id.*; *see also* TEX. HEALTH & SAFETY CODE ANN. § 313.002(8) (Vernon Supp. 2009) (defining "patient" as a person who "is admitted to a hospital"; "is residing in a nursing home"; or "is receiving services from a home and community support services agency"). According to the court, "[t]his clearly implies that a person must be alive in order to be a 'patient.'" *Hare*, 2007 WL 3037708, at *3. Noting that "the idea that a cadaver can be a 'patient' is, on its face, illogical," the court held that "a dead body is not a patient" and cannot "receive 'medical care, treatment, or confinement' after death." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(19)); *see also Putthoff v. Ancrum*, 934 S.W.2d 164, 171 (Tex. App.—Fort Worth 1996, writ denied) (stating that a doctor conducting an autopsy is "not performing the services of a health care provider," the deceased is not a patient, and the autopsy is not a form of medical treatment). Thus, the court concluded that the plaintiff's claim relating to an alleged failure to obtain consent for an autopsy was not a health care liability claim and not subject to chapter 74's requirements. *Hare*, 2007 WL 3037708, at *3.

Here, Salazar complains of Dr. Ross's failure to order an autopsy before signing the death certificate and Dr. Ross's indication of cause of death by natural causes on the death certificate without conducting an autopsy or being present for the death. As in *Hare*, these allegations are not health care liability claims. Because Salazar's father was already dead at the time Dr. Ross allegedly departed from acceptable standards and practices, his father could not be a "patient." Nor could his

father have received medical care, treatment, or confinement after his death.[3] Thus, Salazar's allegations against Dr. Ross do not fit within chapter 74's definition of "health care liability claims." And, because they are not health care liability claims, the trial court erred in granting summary judgment in favor of Dr. Ross on grounds that Salazar had not complied with chapter 74's requirements.[4]

## OTHER ISSUES

On February 10, 2009, we struck the first brief Salazar filed, ordered him to file an amended brief, and warned him that he could not circumvent the fifty-page limit by arguing the merits of his issues within the "Issues Presented" section of his brief. *See* TEX. R. APP. P. 38.1(f) (requiring brief to state "concisely all issues or points presented for review"). On March 6, 2009, we struck the second brief filed by Salazar, and once again warned him that his statement of the issues presented should be concise statements and should not argue the merits of the issues. Salazar's third brief now lists ten pages of "Issues and/or Points." To the extent that any issue is argued in the "Issues and/or Points" section of his brief and not in the "Argument" section of his brief, he has waived the issue through improper briefing. *See* TEX. R. APP. P. 38.1.

Salazar also complains that his motions to recuse several judges who ruled on matters below should not have been denied.[5] We review the denial of a motion to recuse under an abuse of discretion standard on appeal. *See* TEX. R. CIV. P. 18a(f). After reviewing the record, we find no

---

[3] We emphasize that we are not commenting on the validity of Salazar's claims against Dr. Ross.

[4] We note that Dr. Ross moved for summary judgment only on the basis of Salazar's noncompliance with chapter 74.

[5] We note that these judges about which Salazar complains on appeal did not hear or sign the summary judgments at issue. Instead, the Honorable Peter Sakai granted both summary judgments.

abuse of discretion in the denial of the motions to recuse. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001). In his brief, Salazar also complains of orders this court issued in this appeal before the appeal was set for submission. We find all his arguments to be without merit.

Finally, Salazar complains that SCI is not the correct party and that he sued Roy Akers Funeral Chapels and Sunset Northwest Funeral Home. Thus, he argues that his motion to show authority should have been granted by the trial court. SCI responds that although Salazar's original petition misidentified SCI's assumed names, it voluntarily entered an appearance, and the assumed name statute does not create a remedy for Salazar's private enforcement. We agree. The assumed name statute requires every corporation operating under an assumed name to file an assumed name certificate with the Secretary of State and with the county clerk where the entity is doing business. TEX. BUS. & COM. CODE ANN. § 71.103 (Vernon Supp. 2009). Failure to file an assumed name certificate affects a plaintiff's capacity to bring suit. *See id.* § 71.201(a) (Vernon 2009) (explaining that "the person may not maintain in a court of this state an action or proceeding arising out of a contract or act in which an assumed name was used until an original, new, or renewed certificate has been filed as required by this chapter"); *see also* § 71.002(9) (defining "person" as including "an individual, partnership, limited partnership, limited liability company, registered limited liability partnership, company, or corporation"). And, failure to file an assumed name certificate may result in a plaintiff receiving "expenses incurred, including attorney's fees, in locating and effecting service of process on the defendant." *Id.* § 71.201(b). It does not, however, affect a defendant's ability to defend itself in civil litigation. *Id.* § 71.201(a) ("A person's failure to comply with this chapter does not impair the validity of any contract or act by the person or prevent the person from defending any action or proceeding in any court of this state . . . .").

## CONCLUSION

With respect to SCI, Pauline Dickey, Frank Dickey, and Elizabeth Rodriguez Coronado, we affirm the summary judgment of the trial court. However, with respect to Salazar's claims against Dr. Ross, we reverse the judgment of the trial court and remand the cause to the trial court for further proceedings consistent with this opinion.


Karen Angelini, Justice