

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NOS. WR-82,265-01 & WR-82,265-02

### IN RE TYRONE ALLEN, Relator

### ON PETITIONS FOR WRITS OF MANDAMUS TO THE FIFTH COURT OF APPEALS CAUSE NOS. 05-14-01167-CV AND 05-14-001168-CV DALLAS COUNTY

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

Because the ministerial act that is at the center of the dispute in this case was performed by a trial judge who is no longer on the bench and has no power to change the offending order, the court of appeals's decision to conditionally grant a writ of mandamus against that trial judge has become moot during the pendency of this proceeding. The appropriate action by this Court, which is effectively reviewing the propriety of the court of appeals's judgment conditionally granting mandamus relief against a former trial-court judge, is to order the appellate court to vacate its prior judgment, hold the petition in abeyance, and

abate the case to the trial court. The purpose of abatement under these circumstances is to permit the current trial-court judge to determine whether he will adopt as his own the former trial court's order permitting a pretrial determination on intellectual disability. If the current trial judge does adopt the former judge's order, then the court of appeals may reinstate its judgment by ordering that a writ of mandamus will issue against the current trial judge, and the mandamus proceedings in this Court may move forward as they now have. But if the current trial judge does not adopt the former judge's order, then the court of appeals must dismiss the petition as moot because the offending order would no longer exist. In short, under the current procedural posture of this case, this case has become moot during the pendency of this appeal. This Court accordingly lacks jurisdiction to issue a writ of mandamus against the court of appeals because the subject of the proceedings in this Court—the appellate court's order conditionally granting a writ of mandamus against a former trial-court judge—no longer constitutes a live controversy in light of the fact that the former trial judge has no authority to rescind the offending order or to comply with the court of appeals's writ. Any resulting opinion by this Court in reviewing this matter, therefore, is necessarily purely advisory.

Alternatively, assuming that this Court has jurisdiction to order the court of appeals to rescind its judgment conditionally granting a writ of mandamus against a former judge who lacks authority to comply with the writ, I am persuaded by the argument presented in the dissenting opinion by Judge Newell that, under the judicial-ripeness doctrine, a trial court

lacks jurisdiction to conduct a pretrial determination of intellectual disability in a capital-murder case, and I join his opinion. Alternatively, further assuming that this Court properly considers the petition on the merits, I would uphold the court of appeals's judgment granting the State's original application for a writ of mandamus to preclude the trial court from conducting a pretrial determination of intellectual disability. Mandamus relief is appropriate when a trial court has no discretion, as here, but to abide by principles of law that have been in effect for more than a decade: the jurisdictional doctrine of ripeness, Texas statutes, and this Court's precedent for addressing this type of claim.

## I. Abatement to the Trial Court Is Required Under the Doctrine of Mootness

Given that the trial judge who granted relator's motion for a pretrial intellectual-disability hearing, Judge Larry Mitchell, is no longer the presiding judge of the 292nd Judicial District Court, this Court is obligated to order the court of appeals to vacate its prior judgment and abate the case to the trial court so that the now-presiding judge may have the opportunity to reconsider the previous trial judge's original ruling in this case. Such an approach is consistent with the applicable law, which indicates that abatement is generally required under these circumstances for the purpose of allowing a successor judge to reconsider a prior judge's disputed ruling in order to ensure that an actual controversy continues to exist in the case. Moreover, under the particular facts of this case, the current proceedings have, at this stage, been rendered moot as a result of the original trial judge being succeeded in office by another judge. Absent any further ruling by the current

presiding judge that indicates the continuing existence of a live controversy, the resulting opinion by this Court addressing the merits of this petition constitutes a prohibited advisory-only opinion.

## A. Applicable Law Governing Propriety of Abatement

The Texas Supreme Court has observed that mandamus "will not issue against a new judge for what a former one did." *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 228 (Tex. 2008) (explaining that abatement is required "to allow the successor [judge] to reconsider the order"); *see also In re Schmitz*, 285 S.W.3d 451, 453 (Tex. 2009) (observing that, when judge whose ruling is at center of mandamus proceeding is succeeded by another, "[n]ormally, this would require abatement for reconsideration"); *State v. Olsen*, 360 S.W.2d 402, 403 (1962) (per curiam) (observing that, because original trial judge who was party to mandamus proceeding had died, proceeding was "moot," and holding that "[a] writ of mandamus will not lie against a successor judge in the absence of a refusal by him to grant the relief Relator seeks"). This rule has its foundation in the Texas Rules of Appellate Procedure, which provide that, when a public officer is a party to an original mandamus proceeding in the Supreme Court or a court of appeals and he ceases to hold office before the mandamus proceeding is finally disposed of, the court "must abate the proceeding to allow the successor to reconsider the original party's decision." Tex. R. App. P. 7.2(a), (b). The rationale underlying the rule is that, for mandamus relief to lie, a live controversy must exist between the parties. "A case becomes moot if a controversy ceases to exist between the

parties at any stage of the legal proceedings, including the appeal." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *see also State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (orig. proceeding) (stating that for controversy to be justiciable, there must be a real controversy between the parties that actually will be resolved by the judicial relief sought); *Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 505 (Tex. 1995) (Court will not issue mandamus relief if it would be useless or unavailing). Because a pretrial ruling by a trial judge who is no longer in office may readily be rescinded and superseded by a subsequent pretrial ruling from the successor judge, a dispute stemming from such a ruling is essentially moot, and, as such, that type of ruling cannot form the basis of a live controversy that is the subject of mandamus proceedings. *See Kellogg*, 166 S.W.3d at 737; s*ee also In re Bonilla*, 424 S.W.3d 528, 534 (Tex. Crim. App. 2014) (declining to grant mandamus relief and dismissing petition because "particular dispute" had become "moot"); *State ex rel. Holmes v. Denson*, 671 S.W.2d 896, 899 (Tex. Crim. App. 1994) (where relief sought has become moot, "there is nothing to mandamus, ergo mandamus does not lie").

## B.  Abatement Is Required In Light of Mootness

Applying these principles to the present context, I observe that all of the foregoing rationales for requiring abatement to a successor trial-court judge are relevant to this case. Here, the controversy between the parties stems from the action of the original trial-court judge in granting relator's motion for a pretrial intellectual-disability hearing. The continuing viability of that ruling is, at this point, questionable at best. The successor judge has had no

opportunity to revisit the prior judge's ruling because of the pendency of these mandamus proceedings and the resulting stay of all proceedings in the trial court. At some point in the future, proceedings in this case will necessarily resume in the trial court, at which point the successor judge will have plenary power over the case and will be fully authorized to rescind the prior judge's orders granting relator's request for a pretrial hearing. As this Court's majority opinion accurately observes, because this is a mandamus proceeding, this Court is not actually deciding the propriety of the trial court's order, and thus there would not be any law of the case to prohibit the successor judge from reconsidering this pretrial ruling. Given these circumstances, there exists no live controversy between the relevant parties because the person who granted the challenged motion, the former trial judge, now lacks the authority to either carry out or rescind his original ruling. In the absence of a live controversy between the parties, mandamus relief is inappropriate. *See Kellogg*, 166 S.W.3d at 737.

With respect to the appellate-court proceedings in this matter, I observe that, like the proceedings in the trial court, the result of those proceedings—the order conditionally granting the State's request for mandamus relief against the former judge—has similarly been rendered moot as a result of Judge Mitchell's departure from the bench. The appellate court's order in this case was directed at Judge Mitchell and was not directed more generally at the trial court. *See Schmitz*, 285 S.W.3d at 454 ("Of course, the writ must be directed to someone[.]"); *O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 97 (Tex. 1992) (must be proper request stating correct legal reason directed to judge against whom mandamus is

sought). But, now that Judge Mitchell is no longer in a position of authority to comply with the appellate court's mandamus order, that order cannot be enforced against him. *See Baylor*, 280 S.W.3d at 228. And because the writ was not directed at the trial court, the appellate court's mandamus order cannot properly be enforced against the successor judge or anyone else. *See id.* To the extent that we are presently reviewing the propriety of the court of appeals's conditional grant of mandamus relief, this Court's majority opinion does not explain how a live controversy continues to exist with respect to the appellate court's order, which, at this point, has become moot because it is directed at a person who is no longer in a position to effectuate it. Moreover, the rules of appellate procedure and case law prohibit enforcement of that order against the current presiding judge, absent an opportunity for him to revisit the ruling. *See id.*; TEX. R. APP. P. 7.2. And the rules and case law further provide that a trial judge must be provided such an opportunity. *See id.* Because the court of appeals's mandamus order directed at the previous trial judge is clearly unenforceable against the current presiding judge and, therefore, moot, any opinion by this Court reviewing the propriety of that order is necessarily advisory in nature. *See Pfeiffer v. State*, 363 S.W.3d 594, 600 (Tex. Crim. App. 2012) (observing that this Court is "without authority" to render advisory opinions).

It is suggested that Judge Mitchell's succession by another judge is irrelevant to our resolution of the proceedings in this Court because, at this stage, we are not directly considering the trial judge's ruling in granting relator's motion for a pretrial hearing, but we

are instead considering whether a writ of mandamus from this Court is an appropriate vehicle to correct the court of appeals's judgment in the proceedings below. I observe, however, that regardless of the procedural posture in which this case comes to us, the requirement of a live controversy between the parties persists, and a case may become moot if a controversy ceases to exist "at any stage of the proceedings, including the appeal." *Kellogg*, 166 S.W.3d at 737. However desirable it may seem to correct what is viewed as an erroneous ruling by the court of appeals, a writ of mandamus from this Court is an inappropriate vehicle to do so when the underlying appellate-court order is no longer enforceable against any party to these proceedings.

Along these same lines, it is suggested that abatement is not required because Rule 7.2 does not apply directly to proceedings in this Court. I, however, observe that, to the extent that we are reviewing the propriety of the appellate court's actions in conditionally granting mandamus relief, we are bound to consider Rule 7.2 because it is applicable to mandamus proceedings in the court of appeals. *See* TEX. R. APP. P. 7.2(b); *Baylor*, 280 S.W.3d at 228. Furthermore, because the court of appeals issued its opinion on October 3, 2014, while Judge Mitchell was still on the bench,[1] that court has never been afforded the opportunity to decide whether abatement is required under that rule. Given the change in circumstances that has arisen since the time its opinion was issued, the appellate court should now be afforded the opportunity to comply with the rule.

---

[1] *See In re Watkins*, Nos. 05-14-01167-CV, 05-14-01168-CV, 2014 WL 5903105 (Tex. App.—Dallas Oct. 3, 2014).

Now that Judge Mitchell had been superseded in office, the appropriate and required course of action is abatement in order to give the current presiding judge an opportunity to reconsider the previous ruling granting relator's request for a pretrial intellectual-disability hearing, thereby ensuring the continued existence of a live controversy in this case. *See* TEX. R. APP. P. 7.2(b); *Baylor*, 280 S.W.3d at 228. The court of appeals's order conditionally granting mandamus relief to the State in the proceedings below is now moot because it is directed at the former judge who is no longer in a position to take any action on that order, and that order may not properly be enforced against the successor judge. *See id.* Because the Court determines that, notwithstanding these circumstances that eliminate the existence of a live controversy in this case, mandamus relief is nonetheless warranted, I disagree with the Court's decision to conditionally grant relator's requested relief.

## II. Assuming that Court Properly Considers Relator's Petition, His Requested Relief Should Be Denied

Even were I to agree that this Court properly addresses the merits of relator's present request for mandamus relief, I would nevertheless disagree with the Court's decision to grant that relief. As indicated above, I agree with the position taken by Judge Newell that a trial court lacks jurisdiction to conduct a pretrial hearing on intellectual disability because that issue is not ripe until the punishment phase of trial.

Further assuming that this Court has jurisdiction to address this moot order pertaining to an unripe matter, I conclude that, on the merits, mandamus relief is unwarranted. Before addressing the merits, it is important to understand the way that the statutory scheme set forth

by the Legislature has worked, at least until this Court's decision today. Through numerous provisions, the Code describes a capital-murder proceeding as follows: The State decides to seek the death penalty against a person indicted for capital murder; individual voir dire is conducted; the State presents evidence in a guilt stage of trial; a jury decides whether the evidence proves capital murder; if the jury has convicted a defendant of capital murder, it answers certain special issues in a sentencing phase of trial; the trial court sentences a defendant either to life in prison or to the death penalty depending on the jury's answers to the special issues; and, on appeal, a defendant either files a notice of appeal to the court of appeals challenging his life sentence or there is an automatic appeal of his death sentence to this Court. Up until today, a defendant's claim of intellectual disability has been addressed either in the sentencing phase of his capital-murder trial or in a post-conviction hearing.

In contrast to this procedural scheme that has been followed in Texas for over a decade, here, at a pretrial stage, the trial court would conduct a hearing at which relator is given the opportunity to prove that he is intellectually disabled before he is ever tried or convicted of capital murder. At this pretrial stage, the State would have to provide evidence establishing a defendant's guilt of the offense in order for the fact finder to be able to assess how that evidence may weigh into assessing whether he is intellectually disabled. This pretrial hearing would essentially become applicant's first trial on guilt and would require the State to marshal all of its evidence to show his role in the commission of that offense. If a defendant is determined to be intellectually disabled, a trial court may decide to deprive

the State of the opportunity to seek the death penalty based on the court's determination that the defendant would be constitutionally ineligible for it. Alternatively, even if he is found to be intellectually disabled at the pretrial hearing, the State would still have the right to individual voir dire and to seek the death penalty, at least according to the provisions in the Code of Criminal Procedure that are discussed below. After the pretrial hearing, therefore, applicant's regular guilt trial would occur. Assuming he is found guilty of capital murder, applicant would again be permitted to present any evidence of his intellectual disability, as that would be relevant to the mitigation special issue. Assuming that he is sentenced to death, applicant likely would have a third opportunity to present evidence of his intellectual disability in an application for a writ of habeas corpus either through a claim asserting ineffective assistance of counsel or through any new evidence on that subject. The end result of all of this will be that the guilt evidence will be presented twice, at the pretrial hearing and at the regular trial, and the defendant will have at least three opportunities to prove his intellectual-disability claim: at the pretrial hearing, regular trial, and in post-conviction proceedings.

There is only one rational decision under unequivocal, well-settled, and clearly controlling legal principles: This bizarre procedural scheme, fancifully created by this single trial court judge, is contrary to over a decade of jurisdictional principles, legislative statutes, and this Court's precedent. This Court should not abdicate its responsibility to ensure that the law in Texas is not applied by a single trial judge in such an extraordinary and absurd

manner. *See, e.g.*, *In re State ex. rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). Because the State has shown that under well-established and long-standing law it is entitled to mandamus relief against this aberrant order, this Court has no discretion but to uphold the appellate court's order conditionally granting the State the relief that it seeks, as explained more fully in my two points below.

### A. When Viewed in Their Totality, Texas Statutes Applicable to Capital-Murder Trials Preclude a Pretrial Determination

In this context, it is unnecessary to lament the Legislature's failure to specifically pass statutes that would address how intellectual-disability claims should be handled because the Legislature has enacted general procedures for the litigation of a capital-murder case that, when viewed in their totality, definitively control the process applicable to such a proceeding. A pretrial determination of intellectual disability is outside the realm of what the Legislature has described with respect to the procedures applicable in a capital-murder trial. The absence of a specific rule disallowing a pretrial determination as to intellectual disability, therefore, is immaterial.

Through numerous statutes, the Legislature has enacted a general procedural scheme applicable to all capital-murder cases based only on the State's representation that it is seeking the death penalty. *See* TEX. CODE CRIM. PROC. art. 35.15(a) ("In capital cases in which *the State seeks* the death penalty both the State and defendant shall be entitled to fifteen peremptory challenges."); *Id.* art. 35.17, § 2 ("In a capital felony case in which *the State seeks* the death penalty, the court shall propound to the entire panel of prospective

jurors questions [and] . . . . examine each juror on voir dire individually and apart from the entire panel"); *Id*. art. 37.071, § 2(a)(1) ("If a defendant is tried for a capital offense in which *the state seeks* the death penalty, on a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment without parole."); *Id*. art. 37.071, § 1 ("If a defendant is found guilty in a capital felony case in which *the state does not seek* the death penalty, the judge shall sentence the defendant" to life imprisonment without parole.); *see also id*. art. 37.0711 §§ 2, 3 (emphasis added in all the parentheticals). These mandatory provisions are contingent only on the State's decision to seek the death penalty. Based on the general scheme set forth by the Legislature establishing rules that become applicable to a capital murder case only upon the State's decision to seek the death penalty, it is clear that the trial court has no discretionary authority to create an additional barrier to the State's right to seek the death penalty in the form of a pretrial determination of intellectual disability.

Perhaps, in this case, even if the trial court were to decide in a pretrial hearing that relator is intellectually disabled, the trial court would nonetheless permit this trial to proceed as it normally would in a capital-murder case in which the State seeks the death penalty, with, for example, individual voir dire and special issues in the sentencing phase. Even if that were to occur, I would hold, based on the entire statutory scheme set forth by the Legislature that is mandatory and contingent only upon the State seeking the death penalty, that a trial court has no statutory authority to additionally require the State to successfully defend against

a defendant's pretrial claim of intellectual disability as a prerequisite to the normal progression of a capital-murder trial.

**B. Permitting a Pretrial Determination on Intellectual Disability is Clearly Unauthorized by this Court's Jurisprudence**

This Court's jurisprudence in *Ex parte Briseno* has set forth the standard for determining whether a particular defendant is ineligible for the death penalty due to intellectual disability, but that standard contemplates that a defendant has already been found guilty of capital murder. *See Ex parte Briseno*, 135 S.W.3d 1, 8-9 (Tex. Crim. App. 2004) (setting criteria for determination of intellectual disability); *see also Ex parte Sosa*, 364 S.W.3d 889, 890 (Tex. Crim. App. 2012). The *Briseno* standard operates under the assumption that the defendant is in fact guilty of the capital murder for which he has been indicted. *Id.* One of the *Briseno* factors specifically asks, "Putting aside any heinousness or gruesomeness surrounding the capital offense, did the commission of that offense require forethought, planning, and complex execution of purpose?" *Id.* At a pretrial stage, a defendant is presumed innocent and no facts of the commission of the offense have been proven. *See Coffin v. United States,* 156 U.S. 432, 453 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). The constitutional principle that a defendant be presumed innocent until proven guilty stands in stark contrast to this Court's jurisprudence for deciding an intellectual-disability claim that requires consideration of a defendant's actions while committing the

capital murder for which he has been found guilty. I conclude that a trial court lacks the discretion to conduct a pretrial hearing on intellectual disability in contravention of federal constitutional law or this Court's jurisprudence.

### III. Conclusion

Because the trial judge who granted relator's motion for a pretrial intellectual-disability determination is no longer presiding over relator's capital-murder trial, and because the appellate court's order conditionally granting mandamus relief was directed against that judge, I conclude that abatement is required in order to afford the now-presiding judge an opportunity to revisit the underlying ruling in this case. In the absence of abatement, mandamus will not lie against the successor judge, and any ruling by this Court evaluating the appellate court's conditional grant of mandamus relief, which has now been rendered moot, will necessarily be advisory.

Even accepting the correctness of the majority opinion's decision to address the merits of relator's petition, I observe that the argument, "But you didn't say that I couldn't do *this*" is not a persuasive argument from my kids when they act in contravention to one of my general rules, nor is it here, where it is abundantly clear that federal, statutory, and state rules that have been generally set forth apply to cover this situation. Because, as Judge Newell has explained, an intellectual-disability claim is not yet ripe at a pretrial stage, and because the legislative statutes and this Court have definitively set forth a procedural scheme that requires that intellectual-disability claims be litigated during the sentencing phase or in the post-

conviction phase of a capital-murder trial, I respectfully dissent.

Filed: May 13, 2015
Publish