**Conditionally Grant Writ of Mandamus; Opinion Filed August 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00518-CV

### IN RE SHARON LAURIETTE, Relator

**Original Proceeding from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-12-07868**

# MEMORANDUM OPINION

Before Justices Francis, Myers, and Schenck
Opinion by Justice Myers

This case involves a mediated settlement agreement entered into in a divorce proceeding.[1]

The trial court determined the agreement was ambiguous, and the court vacated and set aside the

agreement. Relator Sharon Lauriette filed a petition for writ of mandamus requesting that we

order the trial court to vacate its order vacating and setting aside the agreement. We agree, and

we conditionally grant the writ.

### BACKGROUND

Sharon Lauriette and Samy Lauriette were married on August 16, 1998. They had one

child during the marriage. On April 14, 2012, Samy filed for divorce. The parties participated in

two full days of mediation, but they did not reach an agreement at that time. However, the

parties continued to negotiate, and they traded proposed settlement agreements. After a few

---

[1] The divorce proceeding was joined with a suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 6.406(b) (West 2006). The mediated settlement agreement covered both proceedings. The issues in this original proceeding concern only the divorce proceeding.

months of negotiation, the parties signed the "Mediated Settlement Agreement" on February 10, 2014. The agreement divided the parties' property and debts and provided for custody and care of their child. The agreement also contained the following provision for post-divorce spousal maintenance or alimony:[2]

> Father to pay Mother post-divorce maintenance in the amount of $7,500.00 per month for 72 months beginning March 1, 2014. Alimony shall terminate only if Father becomes the Sole Managing Conservator under the conditions set forth in paragraph 3 above and not as a result of other factors or other changes of conservatorship. Alimony is not terminated upon death of Father, cohabitation of the Mother, or marriage of the Mother.

Paragraph 3 of the agreement provided that if one parent changed residences to outside a specified area or failed to return the child timely after a holiday or vacation, then the other parent would become the sole managing conservator. The agreement also provided that "[t]he Decree . . . shall be prepared consistently with the Texas Family Law Practice Manual forms." It also provided that any dispute in the drafting of the decree "that cannot be settled through direct communication will be submitted to mediation . . . ."

The parties disagreed about how to incorporate the alimony provision into the decree. Specifically, they disagreed about whether termination of the alimony payments was limited to Samy becoming sole managing conservator under paragraph 3 or whether Samy's obligation to make the payments would terminate if Sharon died before all payments were due.

Whether the payments would terminate at Sharon's death has tax consequences for the parties. If Samy would have no liability to make the payments after Sharon's death, then the payments qualify as "alimony or separate maintenance payments" under the Internal Revenue Code, and the payments are deductible from Samy's income and are taxable as income to Sharon. *See* 26 U.S.C. § 71(a), (b)(1)(D); *id.* § 215(a), (b). However, if the payments do not

---

[2] Sharon asserted the payments were intended to be part of the property division and not just contractual alimony. Although we refer to the payments throughout this opinion as "alimony" or "spousal maintenance," we make no determination of whether the parties intended the payments to be part of the property division.

terminate at Sharon's death, then the payments do not qualify as "alimony or separate maintenance payments" under the Internal Revenue Code and are not deductible by Samy or taxable to Sharon. The parties returned to mediation to try to resolve their differences; however, they were unable to reach an agreement on this matter.

After the parties' mediation of this disagreement failed to lead to a settlement, they each filed a motion for judgment with a proposed decree attached. Samy also filed a motion to vacate or set aside the agreement. Sharon's proposed decree stated the alimony obligation "shall only terminate if and only if [Samy] becomes the sole managing conservator" under the conditions in paragraph 3 of the agreement. Samy's proposed decree stated the obligation:

> shall earlier terminate, without further obligation of [Samy] to [Sharon] if:
>
>> (1) If father becomes the Sole Managing Conservator as set forth herein under conservatorship; or
>>
>> (2) The death of [Sharon.]
>
> Further, there shall be no liability for [Samy] to make any payments for any period after the death of [Sharon], and there is no liability for [Samy] to make any payment in cash or property as a substitute for such payments after the death of [Sharon].

Samy's proposed decree then discussed the "Tax Impact" of the payments and stated the payments were taxable to Sharon and deductible by Samy. The proposed decree required Sharon to furnish written proof each year that the payments were included as income on her federal income tax return. Samy's proposed decree also stated that Samy could suspend the payments if Sharon failed to include them in her income on her federal income tax return. The parties filed objections to each other's proposed decrees, and the trial court held a hearing.

During the hearing, the parties' discussed their respective positions concerning the agreement's alimony provisions. Samy's position was that the agreement required the parties to use the forms for alimony required by the TFLPM. He asserted that the TFLPM forms provided two ways for alimony to be a subject of a divorce decree: either (1) a statement that the decree

did not provide for alimony or (2) provisions that the parties intended for the alimony payments to meet the definition of alimony under Internal Revenue Code and require that payments stop on the payee-spouses' death, and that the payments be tax deductible by the payor spouse and taxable to the payee spouse. Sharon's position was that the alimony provisions for the decree should be dictated by the terms of the agreement using the TFLPM forms as necessary to implement the terms of the agreement. She asserted that because the agreement does not mention the tax consequences of the alimony or require that the payments terminate upon her death, the TFLPM forms requiring those provisions do not apply. At the conclusion of the hearing, the court determined that the agreement was ambiguous.

At a hearing to determine the parties' intent regarding the tax effect of the alimony payments, Samy, Sharon, and Scott Rewak (an attorney for Sharon), testified. They all testified that the agreement was silent regarding the tax effect of the alimony payments. The trial court admitted rejected drafts of the agreement. These early drafts of the agreement expressly provided that the alimony payments would not terminate on Sharon's death. As explained above, the signed agreement omitted that provision and did not contain a similar express statement of whether the payments would cease on Sharon's death.

After the hearing, the court did not make a finding resolving the ambiguity by determining the parties' intent. Instead, the court signed an order stating, "the Court finds that there is an ambiguity regarding the Parties' intent regarding the tax effect of the alimony in the Parties' February 10, 2014 Mediated Settlement Agreement that cannot be resolved." The order then denied Sharon's motion to enter judgment on the agreement and granted Samy's motion "to Vacate/Set Aside" the agreement. Sharon now brings this petition for writ of mandamus asserting the trial court abused its discretion by vacating the agreement.

## MEDIATED SETTLEMENT AGREEMENT

The family code provides for binding agreements between the parties in divorce proceedings.

> (b) A mediated settlement agreement is binding on the parties if the agreement:
>
> > (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> >
> > (2) is signed by each party to the agreement; and
> >
> > (3) is signed by the party's attorney, if any, who is present at the time that the agreement is signed.
>
> (c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

TEX. FAM. CODE ANN. § 6.602(b), (c) (West 2006); *see also id.* § 153.0071(c)–(f) (West 2014) (mediated settlement agreement in suit affecting parent-child relationship).

In this case, the agreement meets these requirements. Therefore, the agreement is binding, and the parties are entitled to a judgment that conforms to the agreement "notwithstanding . . . another rule of law." *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) (quoting TEX. FAM. CODE ANN. § 6.602(c)).

The issue before us is whether the trial court abused its discretion by setting aside the agreement because it is ambiguous. Both Sharon and Samy assert the agreement is not ambiguous and that the divorce decree should conform to their interpretations of the agreement. If the agreement is not ambiguous, then the trial court's stated reason for setting aside the agreement is not valid, and the court abused its discretion. However, we need not determine whether the agreement is ambiguous, because any ambiguity in the tax treatment of the alimony

payments and whether the payments would cease on Sharon's death did not authorize the trial court to set aside the agreement.[3] The court's doing so was an abuse of discretion.

In *Milner v. Milner*, the parties to a mediated settlement agreement under section 6.602 disagreed about the meaning of a term in their agreement, namely, whether the husband was to transfer to the wife only his beneficial interest in a limited partnership or whether he was to transfer all his rights as a limited partner. *See Milner*, 361 S.W.3d at 622. The trial court entered a divorce decree, but the court of appeals reversed and ordered the trial court to set aside the agreement because there was no meeting of the minds regarding the nature of the partnership interest to be transferred to the wife. *Id.* at 618. The supreme court concluded the agreement was ambiguous (the court did not specifically address whether there was a meeting of the minds), and affirmed the court of appeals' decision to remand the case to the trial court. *Id.* at 622, 623. However, the supreme court determined that the ambiguity was not cause to set aside the agreement. *Id.* Instead, the ambiguity was to be resolved by the appropriate trier of fact. *Id.* at 622. In *Milner*, the agreement provided that any disputes regarding the language of the decree or other documents necessary to effectuate the terms of the agreement would be finally decided through binding arbitration before the mediator. The supreme court stated this language made the mediator, instead of the trial court, the appropriate authority to resolve the fact issue created by the ambiguity. *Id.*

Applying *Milner*, we conclude the presence of an ambiguity in the agreement did not authorize the trial court to set aside the agreement. Samy argues, however, the trial court had no choice but to set aside the agreement. He argues the agreement, like that in *Milner*, required the

---

[3] The supreme court observed that courts of appeals have stated that mediated settlement agreements are not enforceable when they are illegal in nature or procured by fraud, duress, coercion, or other dishonest means. *Milner*, 361 S.W.3d at 619; *see also Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.) (trial court has authority not to enforce illegal provisions in mediated settlement agreement). Because the trial court set aside the agreement due to an ambiguity concerning the tax consequences of the alimony payments, none of those grounds are at issue in this case.

trial court to send any disagreements to the mediator. However, unlike the provision in *Milner*, which authorized the mediator to make the final decision about the ambiguity, the provision in this agreement stated the "issue or controversy . . . will be submitted to mediation . . . ." The parties mediated the issue of the tax effect of the alimony and whether the payments would cease at Sharon's death, but they could not reach an agreement. "Therefore," Samy argues, "the only choice [the trial court] had was to set aside the [agreement], giving the parties the options of returning to mediation to begin anew or moving forward with a trial to the court." We disagree.

In *Milner*, the agreement contained an agreement to arbitrate any disputes. When parties enter into a valid agreement to arbitrate, the parties have agreed that the arbitrator and not the trial court or a jury will be the trier of fact for the disputed issue subject to the arbitration provision. *See Arbitration*, BLACK'S LAW DICTIONARY 125 (10th ed. 2014). In that situation, the trial court has no authority to decide the issue that is subject to the arbitration provision. However, an agreement to mediate is not an agreement to change the trier of fact. An agreement to mediate is an agreement that the parties will use a third party to guide them toward an agreement resolving their dispute. *Mediation*, BLACK'S LAW DICTIONARY 1130 (10th ed. 2014). In the event the mediation does not lead to a resolution, the trial court or jury remains the trier of fact[4] and determines all relevant fact questions. In this case, when the mediation did not result in a resolution, the trial court remained the trier of fact with the duty to resolve ambiguities in the agreement by determining the parties' true intentions. *See Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983) (when contract is ambiguous, "the trier of fact must resolve the ambiguity by determining the true intent of the parties"). We conclude that the provision in the agreement

---

[4] Of course, if the parties agree to arbitration in the event the mediation fails to resolve the dispute, then the arbitrator would be the trier of fact. In this case, there was no such agreement to arbitrate.

requiring the parties to mediate any disputes in drafting the divorce decree did not require the trial court to set aside the agreement when the parties' mediation proved unsuccessful.

We express no opinion whether the agreement is ambiguous or how any ambiguity should be resolved. We conclude only that the trial court abused its discretion in this case by setting aside the agreement.

## MANDAMUS RELIEF

To be entitled to mandamus relief, a relator must show (1) the trial court clearly abused its discretion by failing to apply the law correctly, and (2) the benefits and detriments of mandamus render appeal inadequate. *In re Schmitz*, 285 S.W.3d 451, 458 (Tex. 2009). We have already determined the trial court abused its discretion; therefore, the only remaining issue is whether an appeal could adequately address the error. *See id.*

The trial court's error of setting aside the mediated settlement agreement could be corrected on appeal, but only after the parties had litigated or reached a new settlement concerning the issues in this proceeding. *Cf. Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.) (modifying trial court's judgment on appeal to conform with mediated settlement agreement). Waiting until the appeal to correct this error would deprive the parties of one of the benefits of a mediated settlement agreement under the family code, an end to litigation through the immediate enforceability of the agreement. *See Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).[5] A failure to enforce a

---

[5] As the Houston 14th District Court of Appeals has explained,

> the purpose of alternative dispute measures is to keep parties out of the courtroom. Where a mediated settlement agreement is not summarily enforceable, the trial court is then faced with litigating the merits of not only the original action but also the enforceability of the settlement agreement, thereby generating *more*, not less, litigation. Enforcing mediated agreements as of the time they are entered rather than later also encourages parties to avail themselves of mediation by giving them greater assurance of a prompt and final resolution. Further, parties are more likely to mediate in good faith if they know their agreement will be enforced. Therefore, effecting the plain meaning of section 6.602 is supported by public policy.

*Cayan*, 38 S.W.3d at 166 (citations omitted).

mediated settlement agreement deprives the party seeking to enforce the agreement of one of the benefits of a mediated settlement agreement because it forces the party to expend further time and resources litigating a suit that was settled.

The supreme court has determined that mandamus relief is available to remedy a trial court's erroneous refusal to enter judgment on a mediated settlement agreement because the parties will have lost much of the settlement's benefit if they are required to expend time and resources appealing the error. *See In re Lee*, 411 S.W.3d 445, 450 n.7 (Tex. 2013) (orig. proceeding) (citing *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (orig. proceeding)). Not correcting the trial court's error of setting aside the agreement would similarly deprive the parties of the benefits of a mediated settlement agreement.

In this case, mandamus relief will enable the parties to proceed immediately to determining whether the agreement is ambiguous and permit the trial court to resolve any ambiguity and enter judgment in accordance with the agreement without the time and expense of reaching a final judgment without the benefit of the agreement, followed by an appeal. We conclude the benefits and detriments of mandamus render appellate relief inadequate. *See Schmitz*, 285 S.W.3d at 458.

## CONCLUSION

We conditionally grant Sharon's petition for writ of mandamus and direct the trial court to vacate its order setting aside the mediated settlement agreement. The writ will issue only if the trial court fails to vacate its order.

150518F.P05

/Lana Myers/
_____
LANA MYERS
JUSTICE

–9–