ACCEPTED
01-15-00566-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/27/2015 3:27:53 PM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00566-CV**

**IN THE**

**FIRST COURT OF APPEALS**

**AT HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/27/2015 3:27:53 PM
CHRISTOPHER A. PRINE
Clerk

---

**IN RE VALERO REFINING – TEXAS, L.P.,**

---

Original Proceeding arising from Cause No. 12CV1541, in the 212th District Court of Galveston County, Texas

---

**REAL PARTY IN INTEREST'S**
**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

---

**SIMPSON, P.C.**

Iain G. Simpson
State Bar No. 00791667
1333 Heights Blvd., Suite 102
Houston, Texas 77008
(281) 989-0742
(281) 596-6960 – fax
iain@simpsonpc.com

APPELLATE COUNSEL FOR
REAL PARTIES IN INTEREST
VERNON FOX AND MIKKI FOX

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Real Parties in Interest:**

Vernon Fox and Mikki Fox

**Counsel for Real Parties in Interest:**

Alton C. Todd
THE LAW FIRM OF ALTON C. TODD
312 S. Friendswood Drive
Friendswood, Texas 77546
281-992-8633
281-648-8633 – facsimile

TRIAL COUNSEL

Iain G. Simpson
SIMPSON, P.C.
1333 Heights Boulevard, Suite 102
Houston, Texas 77008
281-989-0742
281-596-6960 – facsimile

APPELLATE COUNSEL

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................ii

INDEX OF AUTHORITIES.........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT....................................ix

RESPONSIVE ISSUES PRESENTED ........................................................1

STATEMENT OF FACTS ...........................................................................1

SUMMARY OF THE ARGUMENT ...........................................................7

ARGUMENT...............................................................................................10

    **The Standard of Review**....................................................................10

    **Responsive Issue One**.......................................................................11

Mandamus cannot issue against a successor judge for her predecessor's order. Valero attacks the wrong order and asks for the wrong relief. Valero's Petition must be denied.

        *A.*    *Judge Griffin's Order for new trial is no longer at issue.*..................................................................12

        *B.*    *Judge Grady's Order does not state her basis, and Valero never asked Judge Grady to do so.*...............12

    **Responsive Issue Two** .......................................................................14

Judge Grady's reasons for declining to reconsider Judge Griffin's order may include considerations of judicial consistency and continuity within the case and her court, as well as recognition that her predecessor was actually present for trial and able to view witness testimony. Such

considerations are anything but unguided and unprincipled. They cannot be an abuse of discretion.

    A.    *Consistency of decisions within a single case is a valid judicial concern.* .......................................................... 14

    B.    *Decision of the case at bar and the trial court's order for new trial rested upon the credibility of many witnesses, none of whose testimony Judge Grady was able to hear in person.* .................................. 15

    C.    *Both considerations of consistency and lack of opportunity to weigh the credibility of witnesses may constitute good cause for allow Fox's new trial to proceed.* ................................................................. 17

**Responsive Issue Three** ..................................................................... 18

Should the Court decide to consider it, Judge Griffin's Order was supported by his own observation of all witnesses during testimony in open court and his evaluation of their credibility.

    A.    *Valero's experts never testified that Fox's experts were wrong.* ...................................................................... 18

    B.    *Fox presented evidence that, even if subjective, is still evidence.* ..................................................................... 19

**Responsive Issue Four** ...................................................................... 21

Evidence showed that Fox suffered physical injury from chemical exposure that is more than just mental anguish and that demonstrated both specific and general causation.

    A.    *Valero mischaracterizes and minimizes the nature of Fox's injury in an effort to make its point.* ............................................................. 21

    B.    *Valero never actually argues that Fox failed to show general causation.* ........................................ 22

    C.    *Fox presented evidence of specific exposure to particular toxins.* ............................................... 23

**CONCLUSION** ........................................................................ 24

**PRAYER** .................................................................................. 25

**CERTIFICATE OF COMPLIANCE** ...................................... 26

**CERTIFICATE OF SERVICE** ................................................ 27

# INDEX OF AUTHORITIES

## *Cases*

*Borg-Warner v. Flores,*
    232 S.W.3d 765 (Tex. 2007).................................................................. 23

*Coastal Tankships, U.S.A., Inc. v. Anderson,*
    87 S.W.3d 591 (Tex. App.—Houston [1st Dist.] 2002,
    pet. denied). ......................................................................................... 22

*Downer v. Aquamarine Operators,*
    701 S.W.2d 238 (Tex. 1985).................................................................. 10

*E.I. du Pont de Nemours & Co. v. Robinson,*
    923 S.W.2d 549 (Tex. 1995).................................................................. 19

*Holloway v. Fifth Court of Appeals,*
    767 S.W.2d 680 (Tex. 1989)............................................................ 10, 13

*In re Anna C. Smith,*
    332 S.W.3d 704  (Tex. App.—Texarkana 2011,
     orig. proceeding)................................................................................. 20

*In re Baylor Med. Ctr. at Garland ("Baylor I"),*
    280 S.W.3d 227 (Tex. 2008).................................................................. 11

*In re Baylor Med. Ctr. at Garland ("Baylor II"),*
    289 S.W.3d 859 (Tex. 2009).................................................................. 12

*In re Columbia Med. Ctr. of Las Colinas,*
    290 S.W.3d 204 (Tex. 2007)............................................................ 12, 17

*In re Cook,*
    356 S.W.3d 493 (Tex. 2011)............................................................ 12, 13

*In re Prudential Ins.,*
      148 S.W.3d 124 (Tex. 2003)................................................................... 10

*In re Schmitz,*
      285 S.W.3d 451 (Tex. 2009)................................................................... 11

*In re Toyota Motor Sales,*
      407 S.W.3d 746 (Tex. 2014)................................................................... 20

*In re United Scaffolding,*
      377 S.W.3d 685 (Tex. 2012)............................................................. 13, 17

*Paradigm Oil v. Retamco Operating,*
      372 S.W.d 177 (Tex. 2012).................................................................... 15

*Slaughter v. Abilene State School,*
      561 S.W.2d 789 (Tex. 1977)................................................................... 19

*Tilton v. Marshall,*
      925 S.W.2d 672 (Tex. 1996)................................................................... 10

*Walker v. Packer,*
      827 S.W.2d 833 (Tex. 1992)................................................................... 10

## *Rules*

TEX. R. APP. P. 7.2 ............................................................................... 7, 11

TEX. R. CIV. P. 320................................................................................... 16

## *Secondary Sources*

Michael Henke and Craig Margolis, *The Taking and Use of Video
      Depositions: An Update,* 17 Rev. Litig. 1, 14 n. 56 (Winter,
      1998). ............................................................................................. 16

Stephanie A. Vaughan, *Persuasion Is an Art ... But It is Also an Invaluable Tool in Advocacy*, 61 BAYLOR L. REV. 635, 672 n. 238 (2009)........................................................................... 16

Jansen Voss, *The Science of Persuasion: An Exploration of Advocacy and the Science Behind the Art of Persuasion in the Courtroom*, 29 L. & PSYCHOL. REV. 201, 216 (2005)............................. 16

**STATEMENT REGARDING ORAL ARGUMENT**

Real Parties in Interest, Vernon Fox and Mikki Fox (together, "Fox), request oral argument in this matter but only conditionally and only because Relator, Valero Refining—Texas, L.P., has done so.  In truth, Fox believes that little reason exists for the Court to hear oral argument in this matter.  Should the Court even reach the majority of the record in this case, a review of that record is all that is necessary for the Court's decision.  Oral argument can shed minimal additional light.  Consequently, should the Court grant oral argument to Valero, Fox requests equal time.  Otherwise, Fox waives oral argument.

## RESPONSIVE ISSUES PRESENTED

1.    Mandamus cannot issue against a successor judge for her predecessor's order. Valero attacks the wrong order and asks for the wrong relief. Valero's Petition must be denied.

2.    Judge Grady's reasons for declining to reconsider Judge Griffin's order may include considerations of judicial consistency and continuity within the case and her court, as well as recognition that her predecessor was actually present for trial and able to view witness testimony. Such considerations are anything but unguided and unprincipled. They cannot be an abuse of discretion.

3.    Should the Court decide to consider it, Judge Griffin's Order was supported by his own observation of all witnesses during testimony in open court and his evaluation of their credibility.

4.    Evidence showed that Fox suffered physical injury from chemical exposure that is more than just mental anguish and that demonstrated both specific and general causation.

## STATEMENT OF FACTS

On January 12, 2011, Valero's Texas City refinery released crude oil from a storage vessel in its tank farm, due to overfilling. Droplets of crude oil crossed the road where Vernon Fox, an employee of BP, traveled that day. This much is firmly established by the evidence, and no one disputes it. Fox was on the road near the release when it occurred. Fox testified to

it, and no one disputes it.

In its briefing, Valero suggests that Fox was not exposed to anything from the spill until approximately an hour after the overflow had been stopped. Valero's Petition, at 2. It also notes that Fox had a $H_2S$ monitor on his person that was not triggered. *Id.* But Fox's testimony is somewhat different. Fox testified that he was aware of unusual "smells" when he passed by Valero's tank farm on the way to check a valve that morning, though he did not see anything overflowing. ROA 1:933-44. He testified that those "smells" were much stronger on the return leg of his journey. ROA 1:945. While Fox had his $H_2S$ monitor in the cab of his truck, he was not wearing it at the time. ROA 1:945. It was on his jacket, which was on the truck seat beside him. *Id.* On the return leg of his journey, Fox described driving into a "vapor cloud." ROA 1:946. Perceiving an unsafe situation that needed to be addressed and intending to look for a leak, Fox stopped his truck and exited the cab, leaving his $H_2S$ monitor behind. *Id.* Having observed a spill, Fox returned to his office where he contacted Valero concerning the spill. ROA 1:947. Fox testified that he was shaken by the realization that he had been exposed to a chemical or chemicals that could have been ignited, even as he stood there. ROA 1:947-48. Later that

day, Fox's supervisor sent him home. ROA 1:948-49. The disputes arise with regard to Fox's claimed harm. Valero's argument is that Fox was "faking it."

As both fact and expert witness, Fox presented evidence concerning his course of treatment by Dr. Ly, his treating psychiatrist, who diagnosed Fox with a major depressive disorder. He also presented evidence from Dr. Polk, a clinical psychologist, who cared for and treated Fox for a considerable period. ROA 1:733. Dr. David Axelrad is a psychiatrist and neuropsychiatrist who examined Fox at the request of his counsel. ROA 1:1175. Dr. Axelrad has specific experience treating patients with post-traumatic stress disorder (PTSD). ROA 1:1180, 1:1193. Dr. Axelrad testified that PTSD is a form of physical brain injury resulting from the release of excess stress chemicals. ROA 1:1266. When under stress, the body releases cytokines that promote an inflammatory response. ROA 1:1205. This is more than simple anxiety, but an actual physical response to extreme stress.

Dr. Axelrad testified that Fox suffers from a major neurocognitive disorder, resulting from physical brain injury secondary to exposure to neurotoxins. ROA 1:1197-98. These brain injuries and the resulting

neurocognitive disorder manifest in major impacts on his behavior. ROA 1:1198. Dr. Axelrad also noted that, where a person has suffered brain injury and potentially life-threatening circumstances, this can lead to the development of PTSD. ROA 1:1201. Dr. Axelrad observed that multiple professionals—a clinical psychologist following Fox over a period of time and a treating psychiatrist—diagnosed Fox with PTSD. ROA 1:1202. He also testified that, in his estimation, Fox meets the criteria for a PTSD diagnosis. *Id.*

Dr. Priscilla Ray is a psychiatrist, brought to trial as an expert witness by Valero. Dr. Ray testified that Dr. Ly—Fox's treating psychiatrist—followed appropriate standards of care in treating him, prescribing psychotherapy and medication. ROA 1:1501-02. Dr. Ray testified that Fox claimed symptoms consistent with the disorders he claims and that Dr. Ly prescribed appropriate medication for post-traumatic stress disorder (PTSD). ROA 1:1503-04. Dr. Ray also agreed that, if Fox did not show particular symptoms of PTSD upon her examination of him, this could be due to the fact that medication he was prescribed for that condition was actually working. ROA 1:1502.

Dr. Ray testified that Fox suffered from major depression and from a somatic symptom disorder. ROA 1:1524. She acknowledged that he showed no such symptoms before his exposure to the chemical release. ROA 1:1523-24. She acknowledged that, before this incident, he was a healthy, happy family man, one who enjoyed working. ROA 1:1523. She acknowledged that Fox reported feeling "defeated" and that Dr. Axelrad—who diagnosed Fox with PTSD—could be right. ROA 1:1525. She said that, even in her own opinion, Fox could have "a major depressive disorder." ROA 1:1525-26.

Dr. Ray's explanation for Fox's situation is "malingering" in pursuit of an "external incentive"—money. ROA 1:1522. She testified that pursuit of a lawsuit or disability payments could have motivated him. ROA 1:1520-21. But she could provide no explanation as to why Fox continued to work for a year following his exposure, and used up his sick time and vacation time in that spell. *Id.* She also could provide no explanation as to why a "malingerer" would wait over a year, post-accident, to consult a lawyer. *Id.*

Dr. Ray confirmed that Fox was diagnosed with a major depressive disorder by multiple doctors. ROA 1:1532. She confirmed that Dr. Ly

mentions his suicidal ideation. ROA 1:1549. This occurred in September 2011, prior to any discussion with Dr. Axelrad, Fox's expert witness. ROA 1:1551. The diagnosis and symptoms discussed, up to that point, came solely from Fox's treating health care and mental health care providers. Dr. Ray was asked about Fox's anxiety about returning to work and agreed that it could arise from returning to the location where his chemical exposure occurred. ROA 1:1559. She recognized the recommendation that he take time away from work because of possible safety concerns related to his anxiety and PTSD and that this time away was recommended by his treating health care providers. ROA 1:1560. Again, she recognized that this was prior to any meeting with Dr. Axelrad. ROA 1:1560-61.

Dr. David Rosenfield is a neurologist and expert witness retained by Valero. ROA 1:1572. In his testimony, Dr. Rosenfield confirmed his understanding that, among the chemical components to which Vernon Fox would have been exposed were hydrogen sulfide (referred to throughout the proceedings as "$H_2S$") and benzene. ROA 1:1630-31. Dr. Rosenfield observed that the fact of exposure was not dependent upon the amount of oil or chemicals spilled. ROA 1:1631. Dr. Rosenfield confirmed that $H_2S$ is a neurotoxin and can create neurocognitive deficits. ROA 1:1617. It can

6

also cause a number of other symptoms, including headache, dizziness, weakness, exhaustion, irritability, and insomnia. ROA 1:1621-22. Dr. Rosenfield confirmed that these were symptoms described by Fox. ROA 1:1623-24. OSHA instructs that, at lower concentrations, the effects of exposure can be delayed. ROA 1:1623.

Dr. Rosenfield confirmed that $H_2S$ exposure can occur through inhalation or through eye or skin contact. ROA 1:1621. While apparently disputing Fox's testimony at trial, he testified in his deposition that Fox was most likely exposed to chemical vapors. ROA 1:1633-34. Finally, Dr. Rosenfield confirmed that breathing in $H_2S$ can interfere with the enzyme cytochrome oxidase, an enzyme necessary for brain cells' use of oxygen. ROA 1:1644-45. That interference with oxygen use can cause damage to the brain. *Id.*

## SUMMARY OF THE ARGUMENT

Valero makes much of Hon. Brent Griffin issuing his Order for a new trial on his final day in office, and it spends almost its entire petition attacking the correctness and propriety of Judge Griffin's Order. But it is not Judge Griffin's Order that is in question. A writ of mandamus must be directed to someone, and that someone cannot be an official who no longer

7

holds office. Such is the rationale for TEX. R. APP. P. 7.2(b), which provides for abatement of an original proceeding in order to allow a new office holder to reconsider the actions and orders of her predecessor and provide opportunity to give her own opinion and grounds to justify or refute such an order. That is both the situation here and not the situation here.

Two trial judges, not just one, rejected Valero's position. Valero attacks the wrong order and provides an insufficient mandamus record. Valero attacks Judge Griffin's Order, but it is Hon. Patricia Grady's Order on Valero's Motion for Reconsideration that holds sway. It is Judge Grady who is the Respondent in this matter, and Judge Grady took office and considered the issues at bar well before Valero filed the current Petition. Yet, even knowing that appropriate specificity of a new trial order was an issue in this matter—having pressed it as part of its Motion for Reconsideration (ROA 137-139)—Valero sat on its hands as Judge Grady signed a single-page Order denying its Motion for Reconsideration and cementing Fox's right to a new trial. ROA 188. Valero never protested or sought any greater detail, and the bases for Judge Grady's Order are a mystery. Mysteries cannot support mandamus. Valero argues that judgment on the jury's verdict should have been entered but never sought

8

an explanation as to why it was not. What Valero seeks by way of mandamus this Court cannot grant.

Even so, the potential bases for Judge Grady's Order range beyond what could have been contemplated by Judge Griffin. Maintaining consistency and continuity of judicial decision-making within a Court and a single case; the simple fact that Judge Griffin was able to evaluate the credibility of each witness in open court rather than from a cold record, these are factors that might well have figured in Judge Grady's calculus. As Valero itself admits, the case is largely about credibility. Contrary to Valero's position, however, jurors are not the only ones who evaluate witness credibility. Short of a finding that such reasons are "no reason," Judge Grady's Order cannot be an abuse of discretion.

Finally, even if the Court should delve back into the activities of Judge Grady's predecessor, it will find that Judge Griffin's Order was well within the bounds of his discretion. Valero's own expert witnesses could not rule out Fox's claim to damages, and, even as Valero criticizes Fox's description of symptoms as entirely subjective, its own experts throw around a "diagnosis" of "malingering"—a subjective estimation, if ever there were.

9

## ARGUMENT

## The Standard of Review

Mandamus is an extraordinary remedy, reserved for use in instances of manifest and urgent necessity. *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989). It is not issued as a matter of right, but solely at the discretion of the court, *In re Prudential Ins.*, 148 S.W.3d 124, 138 (Tex. 2003), and only when the relator "satisfies a heavy burden of establishing 'compelling circumstances.'" *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). "As a selective procedure, mandamus can correct clear errors in exceptional cases and afford appropriate guidance to the law without the disruption and burden of interlocutory appeal." *Id.* But the Court may issue mandamus only when the relator demonstrates and the Court finds that (1) the trial court has committed a clear abuse of discretion and (2) the relator lacks any adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

A trial court abuses its discretion only if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators,* 701 S.W.2d 238, 241-42 (Tex. 1985). The question is not whether the reviewing court believes the trial court's action appropriate or correct. *Id.* Valero

10

argues steadily concerning what the jury could have found, but it fails to focus on what the trial court did find. As relator in a mandamus proceeding, it is not enough for Valero to state that its sought after result is a reasonable, permissible outcome. It must argue that it is the *only* outcome consistent with the law.

## Responsive Issue One

> Mandamus cannot issue against a successor judge for her predecessor's order. Valero attacks the wrong order and asks for the wrong relief. Valero's Petition must be denied.

Although a particular respondent is not critical in a mandamus proceeding, the writ must be directed to someone. *In re Schmitz*, 285 S.W.3d 451, 454 (Tex. 2009). And generally a writ will not issue against one judge for what another did. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 228 (Tex. 2008) ("Baylor I"). Thus, in an original proceeding where the judge who signed the order at issue has "cease[d] to hold office," an appellate court "must abate the proceeding to allow the successor to reconsider the original party's decision." TEX. R. APP. P. 7.2. Consequently, the Texas Supreme Court has refused to consider the reasons given by a first trial judge in a new trial order, when it was a successor's refusal to reconsider

11

the order that was at stake. *See In re Baylor Med. Ctr. at Garland,* 289 S.W.3d, 859, 860 (Tex. 2009) ("Baylor II").

### A. *Judge Griffin's Order for new trial is no longer at issue.*

Valero complains—exclusively—about the actions of Judge Griffin. It explores and examines Judge Griffin's new trial order. But Judge Griffin is no longer the judge of the 212th District Court. Judge Griffin ceased being the judge of that Court long before Valero ever filed its Petition for Writ of Mandamus. And Judge Griffin is not the Respondent in this case and is not the one who would be compelled to act by any writ issued by this Court. "As in *Columbia* and *Baylor II* . . . the former trial court's order is no longer at issue here, as the successor trial judge has since issued a subsequent order." *See In re Cook,* 356 S.W.3d 493, 495 (Tex. 2011) (citing *In re Columbia Med. Ctr. of Las Colinas,* 290 S.W.3d 204 (Tex. 2007).).

### B. *Judge Grady's Order does not state her basis, and Valero never asked Judge Grady to do so.*

Even as it raised the alleged dearth of specificity of Judge Griffin's Order in its Motion for Reconsideration (ROA 137-139), Valero has sat on its hands in the trial court since mid-April, when Judge Grady denied that Motion, never requesting a more specific order, and never requesting the

12

justification or basis for Judge Grady's decision. And now, Valero comes to this Court in the name of "manifest and urgent necessity." *See Holloway*, 767 S.W.2d, at 684. Valero simply cannot demand the Court exercise its extraordinary writ power under such circumstances.

Judge Grady's Order does not specify the reasons for her denial of Valero's Motion for Reconsideration. ROA 188. Yet that Order is no less a refusal to enter judgment on the jury verdict than was Judge Griffin's, and it is the only Order that counts now. *See Cook,* 356 S.W.3d, at 494. The Court may not presume that, simply because a valid basis is not stated in the Order, that Judge Grady did not have one. *See In re United Scaffolding,* 377 S.W.3d 685, 690 (Tex. 2012) (trial court's failure to state why it granted a new trial does not mandate a conclusion that it did not have a valid reason for doing so). Valero's failure to request Judge Grady's rationale leads directly to a failure of its mandamus record, and the Court need read no further. Because Valero does not present a record that contains this crucial information, everything else in the record is irrelevant. The record Valero provides is wholly insufficient to show Valero's right to the relief it seeks. Valero's Petition must be denied.

13

## Responsive Issue Two

> Judge Grady's reasons for declining to reconsider Judge Griffin's order may include considerations of judicial consistency and continuity within the case and her court, as well as recognition that her predecessor was actually present for trial and able to view witness testimony. Such considerations are anything but unguided and unprincipled. They cannot be an abuse of discretion.

Valero's burden in its Petition is to show that Judge Grady acted arbitrarily and without reference to any guiding principle in her denial of Valero's Motion for Reconsideration. As has already been argued, Valero cannot show why Judge Grady acted as she did, at all, because Valero never asked her. Nevertheless, as the new judge of a trial court being asked to reconsider the actions of her predecessor, Judge Grady faced concerns distinct from those of Judge Griffin.

### A. Consistency of decisions within a single case is a valid judicial concern.

Valero bases its arguments on what the jury could have found, rather than reviewing what the trial court actually did find. It was the latter that was the basis for its order, not what is cited by Valero. Of course, once again, Valero did not inquire about that basis. That said, consistency of judicial decision-making, particularly within a single case, is a valid

concern for any court. *See, e.g., Paradigm Oil v. Retamco Operating*, 372 S.W.3d 177, 182 (Tex. 2012) (noting the effect of the "law of the case" doctrine). The "law of the case" doctrine applies to questions of law, however, the concerns underpinning it are no less valid when applied to factual determinations and applicability of legal standards. As the newly elected judge of the 212th District Court, Judge Grady may well have been reluctant to go down a path of reconsidering her predecessor's orders, wholesale. If she were to do so in one case, she might be expected to in every case. Mandamus exists to correct clear errors in extraordinary cases. It does not exist to allow litigants to nitpick trial court decisions and press appellate courts to micromanage trial court cases and dockets.

**B.      *Decision of the case at bar and the trial court's order for new trial rested upon the credibility of many witnesses, none of whose testimony Judge Grady was able to hear in person.***

As the only judge who was present in the courtroom for the trial of this matter and the testimony of each witness, Judge Griffin was in a position to see what neither Judge Grady nor this Court can see. Valero itself states that the overriding factor in determining the outcome of this case is credibility. While Valero cites, in particular, Vernon Fox's credibility, the credibility of every witness is significant. Fox's testimony is

15

of particular significance because the centerpiece of Valero's argument is not that he was not exposed to any harmful chemical, but that he is faking his symptoms.

Judge Griffin was able to see and hear each witness—including Fox—testify, rather than relying upon a cold record. Because credibility is such an issue in this matter, Judge Grady was entirely justified in leaving her predecessor's new trial order undisturbed. She had only a transcript before her and could not evaluate the testimonial demeanor of the witnesses.[1] Her reluctance to backtrack from Judge Griffin's order under such circumstances cannot constitute an abuse of her discretion.

### C. *Both considerations of consistency and lack of opportunity to weigh the credibility of witnesses may constitute good cause for allowing Fox's new trial to proceed.*

The Texas Supreme Court has expressly declined to define what constitutes the "good cause" for which TEX. R. CIV. P. 320 permits a new

---

[1] Further, psychologists suggest that non-verbal communication accounts for 65 to 70 percent of the total communication between humans. Stephanie A. Vaughan, *Persuasion Is an Art ... But It is Also an Invaluable Tool in Advocacy*, 61 BAYLOR L. REV. 635, 672 n. 238 (2009) (citing Jansen Voss, *The Science of Persuasion: An Exploration of Advocacy and the Science Behind the Art of Persuasion in the Courtroom*, 29 L. & PSYCHOL. REV. 201, 216 (2005). Other estimates place the figure higher. Michael Henke and Craig Margolis, *The Taking and Use of Video Depositions: An Update*, 17 Rev. Litig. 1, 14 n. 56 (Winter, 1998) ("One commentator has suggested that as much as 60% to 93% of all communication is non-verbal."). Again, this sort of communication was something Judge Griffin could see that Judge Grady could not.

trial. *See In re Columbia,* 290 S.W.3d, at 210 n. 3. In the same case, the Court reiterated the broad discretion that trial courts have to grant new trials. 290 S.W.3d, at 210. Absent any authority suggesting that consistency of practice and limitations on Judge Grady's ability to evaluate the effect of witness testimony are *not* valid considerations, the Court should presume that they are. Again, Valero failed to ask Judge Grady about the reasons for her Order, but both of the above-raised grounds were a part of Fox's response to Valero's Motion for Reconsideration. ROA 1:143-58. "In most cases a new trial will be granted for reasons stated in a motion for new trial, so that such an explanation will alert the parties to the reason the judge found persuasive, further illuminating the substantive basis for the order." *In re United Scaffolding,* 377 S.W.3d, at 688. Based on this, Valero is on notice of both of the above-stated rationales, yet still fails to attack either in its Petition. Once again, Valero's Petition fails and must be denied.

## Responsive Issue Three

> Should the Court decide to consider it, Judge Griffin's Order was supported by Fox's expert witness testimony that linked his chemical exposure to his PTSD and depression, and Valero's experts even admitted that testimony could be correct.

Fox testified to the fact of his own chemical exposure. ROA 1:946. His physician and psychologist experts gave information concerning Fox's major depressive disorder, and Dr. Axelrad testified as to how the exposure could lead to PTSD—a physical condition with behavioral manifestation. Three experts—Drs. Polk, Pollock, and Axelrad—testified that the severe depression and major depressive disorder suffered by Fox resulted from his chemical exposure.

### A.  *Valero's experts never testified that Fox's experts were wrong.*

But even more telling is the testimony of Drs. Ray and Rosenfield, both retained by Valero. Despite Dr. Ray offering an alternative explanation for Fox's symptoms from that posited by Dr. Axelrad, she never testified that Dr. Axelrad was wrong. Indeed, she testified that he could be right. ROA 1:1525. Likewise, Dr. Rosenfield—who never actually examined or met Fox—confirmed that Fox's claimed route of $H_2S$ exposure is a genuine avenue of such exposure and that $H_2S$ is a neurotoxic

18

substance that can cause the sort of neural deficits and problems of which Fox complains. ROA 1:1617. Dr. Rosenfield also testified to the physical damage that such exposure can cause, interfering with the brain's use of oxygen and causing damage to brain cells. ROA 1:1644-45. But, once again, this does not contradict the position taken by Fox's experts who had been treating him for months and—unlike Dr. Rosenfield—had actually spoken to him. The trial court's acceptance of uncontroverted evidence as suggestive that the jury has erred can hardly be an abuse of discretion.

**B.     *Fox presented evidence that, even if subjective, is still evidence.***

Valero's primary complaint appears to be, not that there is no evidence to support Fox's position and the trial court's decision, but that Fox's symptoms are, at least to some degree, subjective and are not easily verifiable by objective means. This does not mean, however, that they are not evidence. *See Slaughter v. Abilene State School,* 561 S.W.2d 789, 791 (Tex. 1977) (expert testimony based upon case history given by patient, physical examination, and x-rays, reciting opinion "consistent with" patient's complained of symptoms was admissible). Nor does it mean that the

19

expert opinions based upon those symptoms are, of necessity, unreliable.[2]

*Id.* Evidence that Valero discounts is, nonetheless, evidence. It is not Valero's job to say what the trial court found convincing; it is the trial court's job.

The combination of testimony from multiple retained and non-retained expert witnesses, as cited by the Court, is more than sufficient to justify its Order. *See In re Anna C. Smith,* 332 S.W.3d 704 (Tex. App.—Texarkana 2011, orig. proceeding) (finding that order reciting witness testimony in general terms was sufficient to meet requirements of *In re Columbia Med. Ctr.*). It is not sufficient that Valero argue what the jury was "free to find." It must attack—entirely—what the Court did find. Provided that the basis for the Court's Order is not contradicted by the record—and it is not—there is no basis for the Order to be re-visited. *Cf. In re Toyota Motor Sales,* 407 S.W.3d 746, 761 (Tex. 2014). To the extent that it was Judge Griffin's job to say, if asked, what he found convincing, he did so. To the extent that it was Judge Grady's job to do so, again, Valero never asked.

---

[2] Moreover, reliability of evidence is, in general, a matter for the trial court to decide. Trial courts routinely opine on the reliability of evidence in order to admit or exclude it. Indeed, it is a core part of the trial court's gatekeeping function. *See, e.g., E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549 (Tex. 1995).

20

## Responsive Issue Four

Evidence showed that Fox suffered physical injury from chemical exposure that is more than just mental anguish and that demonstrated both specific and general causation.

### A.    *Valero mischaracterizes and minimizes the nature of Fox's injury in an effort to make its point.*

Valero next argues that the trial court abused its discretion by granting Fox a new trial because his evidence is legally insufficient to show damages.  In particular, it argues that he cannot recover damages for the injury done to him because he must show a serious physical injury.  In order to minimize Fox's claim, Valero mischaracterizes his claim as one for "mental anguish."  This is not what Fox's claim is about.  Fox's claim is for Post-Traumatic Stress Disorder—a *physical* condition with psychological and behavioral manifestation.

As Dr. Axelrad testified, PTSD is a form of *physical* brain injury resulting from the release of excess stress chemicals.  ROA 1:1266. When under stress, the body releases cytokines that promote an inflammatory response.  ROA 1:1205.  PTSD is not merely anxiety, it is the behavioral manifestation of a very real physical injury.  Valero's discussion of Fox's damage as mere "mental anguish" entirely mischaracterizes his injury and

mischaracterizes his case. Fox presented uncontradicted expert testimony that PTSD results from a serious physical brain injury. Valero never took issue with this testimony in the trial court. It still does not take issue, now.

Furthermore, Dr. Rosenfield testified as to the very physical effects of $H_2S$ on the brain. Dr. Rosenfield confirmed that breathing in $H_2S$ can interfere with the enzyme cytochrome oxidase, an enzyme necessary for brain cells' use of oxygen. ROA 1:1644-45. He also conceded that interference with oxygen use can cause damage to the brain. *Id.* It was not an abuse of discretion for the trial court to take Valero's own witness's testimony at face value.

B. *Valero never actually argues that Fox failed to show general causation.*

Finally, Valero complains concerning general and specific causation. Valero first correctly notes that general causation asks whether a particular substance is capable of causing injury or a condition in the general population. *See Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 602 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Valero then argues that there is no evidence of the amount of toxin to which Fox was exposed. This, of course, is not a question regarding general causation, but one

22

regarding specific causation—toxins causing damage, not in the general population, but in a specific individual.

In any case, Valero's own expert witness, Dr. Rosenfield, acknowledged that Fox was exposed to $H_2S$ and that it is a neurotoxin. ROA 1:1617. He also confirmed that it can cause a number of other symptoms, including headache, dizziness, weakness, exhaustion, irritability, and insomnia. ROA 1:1621-22. These are some of the very symptoms observed in Fox.

Moreover, as Dr. Axelrad testified, at least a portion of Fox's damages stem from PTSD. PTSD is not caused by $H_2S$ exposure but by an extreme stress reaction that causes a release of cytokines within the brain. ROA 1:1205. Exposure is part of the equation, but it is not all of it. Characterizing Fox's claim as entirely a toxic tort claim again mischaracterizes it.

C.    *Fox presented evidence of specific exposure to particular toxins.*

Unlike the case law cited by Valero, which presents toxic exposure cases that developed over many, many years of exposure to toxic products from many different defendants, Fox alleges a single, discreet incident where there is only one defendant. *See Borg-Warner Corp. v. Flores*, 232

S.W.3d 765, 773 (Tex. 2007). *Flores* considered a suit against a particular maker of asbestos-containing brake pads and a plaintiff's allegations that he had been exposed to these brake pads, as well as brake pads from many other manufacturers and asbestos from other sources. A major concern of *Flores* is that evidence be defendant-specific, so that a defendant that causes only minimal exposure cannot be said to have caused an occupational disease.

In contrast, there is no other defendant in Fox's suit but Valero. There is no other evidence showing the source for the toxins to which he was exposed, and there is causal evidence showing that he did not demonstrate his particular symptoms before exposure but did so after exposure. The trial court did not abuse its discretion by declining to apply a precedent that is, factually, worlds apart from the allegations and central facts of Fox's suit.

## CONCLUSION

Mandamus is not a remedy for every trial court error. It exists for use in cases of manifest and urgent necessity, where a trial court has taken action that is unguided by any legal principle or rule. That is not the situation here. Two trial judges viewed the evidence differently from the

24

jury. The first explained the reasons behind granting a new trial in an entirely sufficient order. The second gave no explanation, nor was she requested to give any such explanation. But even if this did not add up to a failure of Valero's mandamus record, Valero simply cannot justify mandamus in this case. The trial court's action is not egregious. It is not unguided. It is simply different from what Valero would have. It is not an abuse of discretion. Mandamus is completely inappropriate given both the state of the record and the evidence adduced. It should be, indeed must be, denied.

## PRAYER

For the foregoing reasons, Real Parties in Interest Vernon Fox and Mikki Fox, respectfully request that Valero Refining Texas, LLC's Petition for Writ of Mandamus be denied.

25

Respectfully submitted,

SIMPSON, P.C.

*/s/ Iain G. Simpson*

_____

    Iain G. Simpson
State Bar No. 00791667
1333 Heights Boulevard, Suite 102
Houston, Texas 77008
(281) 989-0742
(281) 596-6960 – fax
iain@simpsonpc.com

APPELLATE COUNSEL
FOR VERNON FOX AND MIKKI FOX

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response is computer-generated and that those portions required to be counted by Rule 9.4(i)(1), Texas Rules of Appellate Procedure, contain 6,420 words, according to the word-count function of the application used to create it. The response is printed in 14-point typeface, except for the footnotes, which are in 12-point typeface.

*/s/ Iain G. Simpson*

_____

Iain G. Simpson

## CERTIFICATE OF SERVICE

I hereby certify that, on August 27, 2015, I served a true and correct copy of the foregoing Response to Petition for Mandamus via electronic service, certified mail, facsimile, or hand delivery on the following:

David W. Burns
Tekell, Book, Allen & Morris, LLP
1221 McKinney, Suite 4300
Houston, Texas 77010
713-222-9542–telephone
713-655-7727–facsimile

James F. Bennett
Megan Heinsz
Dowd Bennett, LLP
7733 Forsyth Boulevard
St. Louis, Missouri 63105
314-889-7300–telephone
314-863-2111–facsimile

Richard P. Hogan, Jr.
Jennifer Bruch Hogan
James C. Marrow
Hogan & Hogan
Pennzoil Place
711 Louisiana, Suite 500
Houston, Texas 77002
713-222-8800–telephone
713-222-8810–facsimile

Alex M. Miller
The Valero Companies
One Valero Way
San Antonio, Texas 78249
210-345-2857–telephone
210-345-4567–facsimile

COUNSEL FOR VALERO REFINING – TEXAS, L.P.


/s/ Iain G. Simpson

_____

Iain G. Simpson